CAMDEN FIRE INSURANCE ASSOCIATION OF CAMDEN, N. J., Plaintiff, *v.* OTTO BLEEM, Defendant.

City Court of Buffalo, March 23, 1928.

Motor vehicles — collision — action by foreign casualty insurance corporation to recover amount of claim paid its insured by reason of collision at street intersection between automobiles of insured and defendant — collision caused by negligence of defendant — insured had right of way under Gen. High. Traffic Law, § 12, subd. 4 — insurance — subrogation — plaintiff became subrogated to all rights of insured against defendant — fact that insured subsequently executed release to defendant does not preclude plaintiff from recovering from defendant.

In this action by plaintiff, a foreign casualty insurance corporation authorized to do business in this State, to recover from defendant the amount of a claim which plaintiff paid its insured by reason of a collision between the automobiles of the insured and the defendant at a street intersection, the evidence warrants a finding that the collision was caused by the negligence of the defendant and that no act of plaintiff's insured contributed to its happening. Plaintiff's insured had the right to presume that the right of way would be granted to him by defendant as provided by subdivision 4 of section 12 of the General Highway Traffic Law.

The plaintiff, upon its payment to the insured of a claim under its policy, became subrogated to all the insured's rights and claims against the defendant, and a subsequent release to defendant by the insured was in violation of plaintiff's rights, since all rights had already vested in the plaintiff by its payment of the loss called for by the policy by the principle of subrogation reserved therein and by the assignment by the insured of all his claims and right of action; therefore, plaintiff is entitled to judgment for the amount demanded in the complaint.

ACTION to recover for damages to insured's automobile sustained in collision with defendant's automobile at street intersection.

*Werner, Harter & Moran* [*J. Francis Harter* of counsel], for the plaintiff.

*Charles F. O'Connor* [*Sydney S. Siegel* of counsel], for the defendant.

HARTZELL, J.   This is an action by the plaintiff against defendant to recover damages resulting to an automobile owned and driven by one Burt P. Case, by reason of a collision between the said automobile of the said Burt P. Case and an automobile owned and driven by the defendant, occurring at the intersection of Sheridan drive and Campbell road in the township of Tonawanda, county of Erie, and State of New York, on the 10th day of August, 1926.

The plaintiff is a foreign corporation, organized and existing under and by virtue of the laws of the State of New Jersey, with its principal office in the city of Camden, in said State, and duly authorized to do business in the State of New York.

At the time of the accident, the said Burt P. Case carried an insurance policy issued by the plaintiff company, dated the 29th day of March, 1926, whereby it insured the said Burt P. Case against damage to his said automobile by reason of accidental collision with another automobile during the life of said policy which was in being from the said date thereof for the period of one year thereafter.

It is the claim of the plaintiff herein: That the aforementioned collision between the automobile of the said Burt P. Case and the defendant herein resulted in damages to the said automobile of said Burt P. Case, in the amount of $556.10, all of which was due solely to the negligence of the said defendant and without any fault on the part of said Burt P. Case; that by reason thereof, and by the terms of said policy of insurance issued to and covering the automobile of said Burt P. Case, the plaintiff claims that it became liable to and did pay to the said insured, the said Burt P. Case, the said sum of $556.10, together with an additional sum of $15 as an additional expense in adjusting the claim, making a total expense to this plaintiff of $571.10, which sum was paid on the 14th day of August, 1926; that, under the terms of said policy, and by reason of said payment, and by an instrument in writing, dated October 23, 1926, duly made and executed by said insured, Burt P. Case, the said plaintiff became subrogated to all claims and rights of action existing in favor of said insured and against the said defendant.

The defendant, by way of defense, enters a general denial to the complaint herein, and, for a further answer and defense, alleges that a release made and executed by said Burt P. Case on the 7th day of February, 1927, released and discharged the said defendant, Otto

Bleem, from all claims and actions which the said Burt P. Case had against said defendant, of whatsoever name and nature.

It appears from the evidence herein of the witness John A. Curtiss, sworn by the plaintiff, that the said Burt P. Case was driving his automobile on the date in question westerly in Sheridan drive, while the defendant was proceeding in his automobile northerly in Campbell road. The said Burt P. Case was not sworn as a witness in the case, being a resident of St. Louis, Mo. The witness Curtiss was driving his own automobile on the occasion in question southerly on Campbell road, and, coming to Sheridan drive, brought his car to a stop, and testifies that he saw the two cars approaching each other on the intersecting streets, as above described. He further says that when he first saw plaintiff's car it was from 250 to 300 feet from Campbell road, and that defendant's car was about the same distance, approaching Sheridan drive. He further says the two cars kept coming closer and closer together, as the cars proceeded on their respective ways, and that Mr. Case, proceeding westerly on the north side of Sheridan drive, had passed almost entirely over the intersecting street of Campbell road, and when the rear of his car was still slightly over the westerly line of Campbell road, it was struck by the car of defendant. He says that both cars were traveling about the same rate of speed, and that both were about the same distance from the intersecting streets respectively, when he first saw them. He places the point of collision at the northwest corner of the intersecting streets. He also describes the course of plaintiff's car, as proceeding on his right-hand side of the street westerly and near the curb, and states that the defendant was driving his car northerly about the middle of the Campbell road, and, after reaching Sheridan drive, he swerved to his left on the wrong side of the street and caught the rear end of the Case car just before it cleared the west curb of Campbell road, and passing on northerly tipped over on its side near the west curb of the street and about forty feet north of the north side of Sheridan drive. The Case car, after the accident, proceeded westerly, turning towards the south, and then coming back northerly, tipped over near the north curb of Sheridan drive.

The evidence of Mr. Curtiss is supported by that of his wife, Mrs. Minnie Curtiss, who was driving with him at the time, and states that the car of the defendant struck the Case car and turned it over.

The defendant Bleem testifies that he was driving eighteen miles per hour, and the Case car was going twenty-four miles per hour. He says the respective cars *were eight feet apart when he first saw the Case car,* and that in the middle of the road he was struck by the Case car. He further says, " *I swung to the left from the middle of*

*the road.*" Testifying to a conversation had with Case after the accident, he further says that Case said he stepped on the gas as the cars were coming together. He also testifies that, after the happening of the accident and following an action against him, the said defendant, in the Supreme Court, by the said Burt P. Case, the latter executed the release above mentioned, releasing said defendant from all claims and right of action by reason of said collision, the same bearing date February 7, 1927, and being defendant's Exhibit A in evidence. His testimony is supported by his wife, Mrs. Bertha Bleem, who was riding with him at the time of the accident.

Sidney H. Gurnee, claim agent of the plaintiff insurance company, testified as to the payment by him at his office in the city of Buffalo upon the above-mentioned date, August 21, 1926, to the said Burt P. Case, the insured, of the said sum of $571.10 in settlement of the damages sustained by said insured to his car as a result of the collision with the automobile of said defendant. He further testifies that at the time of said payment the said Burt P. Case duly signed the said assignment of the cause of action herein to the said plaintiff, bearing date October 23, 1926, and being plaintiff's Exhibit 1 in evidence, and at the same time requested the privilege of taking it to his home at St. Louis, Mo., for the purpose of submitting the same to his attorney, which assignment was duly returned to said plaintiff by mail.

The witness William H. Smith, experienced in the repairing of damaged automobiles, also sworn on behalf of the plaintiff, testified as to the damages sustained by the Case car as a result of the collision, and placed the value of such work at the said sum so paid by the plaintiff.

The issues involved herein raise two questions for the consideration of the court: *First*, as to the responsibility for the accident; and, *secondly*, as to the right of the plaintiff to maintain this action in view of the release by said Case of all claims and right of action to the defendant hereinbefore mentioned. These matters have received the careful consideration of the court.

As to the first question, that of responsibility for the accident, I am of the opinion, and I so find from the evidence in the case, that the collision occurred by reason of the negligence of the defendant and without any fault on the part of the said Burt P. Case that in any manner contributed to the happening of the accident.

To my mind the evidence clearly establishes the fact that the said Case was driving his car upon the occasion in question upon the right side of the street at a moderate rate of speed as he proceeded westerly in Sheridan drive; that, as he approached the easterly line of

Campbell road, he was in such a position, in reference to the position of the defendant's car as it was proceeding northerly in Campbell road, and in reference to the respective rates of speed at which the two vehicles were moving, that the Case car clearly had the right of way.

The General Highway Traffic Law (§ 12, subd. 4, as amd. by Laws of 1926, chap. 513), relating to the use of vehicles upon the highway, provides that " Every driver of a vehicle approaching the intersection of a street or public road shall grant the right of way at such intersection to any vehicle approaching from his right."

In general terms, the law has been interpreted to mean that, where two vehicles approach a street crossing, so that, if both continued on their way a collision would be likely, the vehicle on the left must give way to the one on the right; and, conversely, if the relative positions of the two vehicles are such that, in the exercise of reasonable care and prudence, the driver on the left would be justified in believing that he could safely pass over ahead of the other without danger of collision, then he may proceed to do so. (*Schultz* v. *Nicholson*, 116 Misc. 114; *Ward* v. *Clark*, 189 App. Div. 344.)

Mr. Case, therefore, was warranted in proceeding to cross Campbell road, and had a right to presume that the right of way would be granted to him by the defendant.    Upon this reliance, fully justified by the facts in this case as revealed by the evidence, he drives his car at a proper rate of speed and close to the curb on his right-hand side, when, having almost crossed Campbell road, and with but the rear end of his car still remaining therein, it is struck on its right rear end as above described, by defendant's car.

The witness Curtiss, who was a stranger to both parties, testifies: " I saw plaintiff's car (the Case car) going westerly on Sheridan drive. It was 250 feet from Campbell road.    I saw defendant's car the same distance, or a little further, 300 feet, from Campbell road."

On cross-examination the defendant himself testifies: " We were about *the same distance from the corner.*    I was nearer the intersection.    He was going 24 miles per hour.    I slowed down to 18 miles per hour."

The inconsistency of his testimony is apparent.    He says that the accident happened in the middle of the road (of the intersecting streets), and that he was struck on the right side by plaintiff's (the Case) car.    At the same time he says that both cars were about the same distance from the corner, the Case car traveling at the rate of twenty-four miles per hour while his car was going at the rate of eighteen miles per hour.    It is manifest, therefore, that, with the Case car traveling twenty-four miles per hour and his own car making only eighteen miles, and both starting from the same

distance from the corner, at the time the defendant's car reached the middle of the intersection the Case car must have passed the point of intersection. The defendant could only have been struck at the intersection of the streets on the right of his car, as he claims, if he had reached that point ahead of the Case car. The latter had already passed that point when he arrived there. This conclusion is further strengthened by his later statement, " I was nearer the intersection." If he was nearer the intersection and driving only three-fourths as fast as the Case car, it would have been, I feel, still impossible for him to have reached the center of the road and been struck by the Case car, in view of the evidence herein.

I also find that the accident occurred at the northwest corner of the two intersecting streets, and at a point where the Case car was legally entitled to be. The defendant's car was on the wrong side of the road. Had it passed on, keeping to its right-hand side of the road, the accident would not have happened. Had the Case car been so close to defendant's car that he could not have avoided the accident if he kept to his right-hand side of the road, then it was his duty to have slowed down his car or brought it to a stop to avoid a collision, as the Case car had the right of way.

The defendant testifies that when he first saw the Case car they were only eight feet apart. If he had been using due care and had his car under proper control, and driving at a proper rate of speed as he approached and proceeded to cross the intersection of the two streets, he could have seen the Case car and avoided the accident. He testifies himself that he did not see the other car until it was eight feet from him. There was nothing to obscure his vision, either by way of traffic or other causes. The lights of the other car were burning, and the time of the accident was early evening of a summer night, the weather clear, without rain or mist.

It is very clear to me that the accident happened solely by reason of his negligence and inattention. He claims that, seeing the Case car so close in front of him, he was obliged to drive to the left to avoid the accident, and thus got onto the wrong side of the road. These facts are not borne out by the evidence. The physical injuries to the Case car, as testified to by the repair man, the witness Smith, is an additional repudiation of defendant's claim. The defendant says his car was struck by the Case car, not at the northwest corner of the streets, but in the middle of the road. He says, " He struck my right front wheel and running board." If this were so, how is the injury to the right rear part of the other car to be accounted for? The witness Smith, testifying to injuries at the rear of the Case car, says that, among other things needed in making the repairs, he supplied a new rear axle housing, drive shaft and axle, two new rear

fenders, and one new rear wheel. To my mind the evidence in the case amply sustains the plaintiff's version of the accident.

In reference to the second question presented by this controversy, it is the claim of the defendant: That, the insured, Burt P. Case, having released to the defendant all claims and right of action by reason of the accident by the instrument above referred to, the plaintiff is without authority to maintain this action; that all claims for damages belonged primarily to the said Burt P. Case, and that the plaintiff insurance company stands in the position of a surety; that plaintiff has no other or more rights than the insured, as the principal under the policy of insurance and to which the plaintiff has been subrogated; that the surety, having no rights superior to its principal, cannot enforce a right that the latter could not enforce, and the latter, having executed to the defendant a general release of all his claims and cause of action by reason of the accident, the same are extinguished, and he thereby defeats the insurer's right of subrogation; in other words, the learned counsel for the defendant contends that the right of subrogation in the plaintiff under the terms of the policy and the circumstances of the case is a limited one, and is conditional upon the good faith of the insured; that if the latter assumes to release the defendant, he not only surrenders his own rights, but those of the insured as well; that this is a risk assumed by the plaintiff and not borne by defendant; that, where there is no suggestion of collusion or fraud, the defendant has a right to assume the good faith of the insured in accepting his release of all claims and right of action, and that the breach thereof is a condition which the plaintiff alone is called upon to bear; that the right of subrogation granted to plaintiff by the terms of the policy can only become valid and effective, where it has paid to the insured a sum of money as damage for collision and no release of claim for that damage has, at any time, been executed by the insured under the policy. As authority for such contention, the defendant submits certain decisions hereafter referred to, which have received the careful consideration of the court.

It will be recalled that the insurance company settled the loss under the policy by payment of the amount sought to be recovered in this action on the 14th day of August, 1926, and that at said time received an assignment from the assured of all his claims and right of action against the defendant herein. As a general principle, by the payment of the damages called for by the policy, the principle of subrogation immediately placed the plaintiff in the place of the creditor, with all his rights and claims to the fullest extent which he possessed against the defendant. The execution of an instrument to accomplish this purpose was not necessary; and the plaintiff, there-

fore, becomes doubly fortified with power to bring this action, provided its right is not defeated by the said release of the assured to the defendant, made on the 7th day of February, 1927.

The general rule is founded on principles of justice and equity that a surety paying off a debt shall stand in the place of the creditor, and have all the rights which the creditor has for the purpose of reimbursing himself. It is true that he takes the claim subject to all its disqualifications and limitations, and that he can acquire no greater rights than the creditor had at the time of payment, for the surety cannot be placed in a more favorable light than the principal, and, where the creditor had no rights, there is nothing to which the subrogee can be subrogated.

What rights did the assured possess that he released to the defendant at the time the release was executed in the instant case? What effect, in other words, does the general release of Case, the insured, to the defendant have upon the plaintiff's cause of action?

The learned counsel for the plaintiff claims it is without any effect whatever; that the insured had already parted with all his rights and claim against defendant at the time the plaintiff became subrogated thereto, and the purported release to the defendant by insured at a later date must be deemed a nullity; that the insured had nothing to release to defendant, and nothing, therefore, passed to defendant by the purported release.

If a loss under a policy of insurance is occasioned by the wrongful act of a third person, the insurer, upon payment, is subrogated to the rights and remedies of the assured, and may maintain an action against the wrongdoer.

If the assured receives the damages from the wrongdoer before payment by the insurer, the amount so received will be applied *pro tanto* in discharge of the policy.

*Connecticut Fire Ins. Co.* v. *Erie R. Co.* (73 N. Y. 399). In the latter case, cited by the defendant herein, plaintiff issued a policy of insurance for $1,500 to the assured upon certain buildings, which were subsequently destroyed by fire through the negligence of the defendant, the buildings being worth $3,400. The assured received $1,800 from defendant for his damages, he executing a release of all claims and demands for the loss. The release contained a statement that the settlement was not intended to discharge plaintiff from any claim of the assured against it, but simply as a full discharge of defendant. Plaintiff thereafter paid the amount of the insurance. In an action to recover the amount paid, it was held that the clause in the release as to the claim against plaintiff (the insurance company) was in the nature of a proviso or exception from the general purview of the release, limiting its effect to a release

of the balance, retaining the claim against plaintiff, and excepting its rights to a remedy over; therefore, as to the plaintiff, the release was of no effect, that it could not have been interposed as a defense upon the policy, and its right to subrogation was not affected thereby.

Another case cited by the defendant is that of *Dilling* v. *Draemel* (16 Daly, 104) wherein plaintiff insured his household goods against loss by fire or collapse of building. The building collapsed as a result of an excavation made by his landlord on an adjoining lot, and plaintiff sued the landlord for the loss. The action was settled by the landlord paying a sum of money to the plaintiff, who executed a release of all claims and demands whatsoever, and then sued the insurance company for the proportion of his loss above said amount. Held, that the insurance company was released to the full extent to which the landlord was released.

In the case of *Franklin Fire Ins. Co. of Philadelphia* v. *Weinberg* (197 App. Div. 576), also cited by defendant, a policy of insurance had been issued to the defendants Weinberg by said plaintiff covering loss by sprinkler damage. Damage having occurred to the property of the defendants, the loss was paid to him by the plaintiff insurance company which claimed the right of subrogation thereby. Thereafter the defendants made a claim against their landlord, the Metropolitan Life Insurance Company, for damages, and, the same being paid, they executed a general release from all demands connected with said loss. Thereupon the plaintiff brought action against the defendants, claiming said release and discharge was in violation of its right of subrogation, and that it had been damaged to the extent of the money paid as aforesaid to said defendants. In denying the plaintiff's right to recover, the court points out that nowhere in plaintiff's complaint is it alleged that defendant's landlord was negligent and that such negligence caused the damage to defendant's property. The court further says that the claim paid by the landlord was not for sprinkler damage, covered by the insurance policy, but was the sum necessary to install heaters on account of the landlord's failure to properly heat the premises. The court says, " such being the case," there is no proof in the case that the damage suffered by the defendants was caused by the negligence of the landlord, and, therefore, there was nothing established in plaintiff's case " upon which any damages can be predicated."

The court further says that the release executed by the defendants " would * * * have been a good defense to an action brought by the defendants against the plaintiff under the policy. (*Bloomingdale* v. *Columbia Ins. Co.*, 84 N. Y. Supp. 572.) In other

words, if the defendants, having executed the general release in question, had then sued the plaintiff to recover damages for the loss under the policy, the plaintiff might have set up such general release as a defense, for the defendants would not, in such event, have been entitled to recover under the policy *which the defendants had themselves breached,* for, certainly, the general release would deprive the plaintiff of its right of subrogation to which it was clearly entitled under the provisions of the policy. The plaintiff, however, in this action sought to recover damages, and it *was* necessary for the plaintiff to show that it had, in fact, sustained substantial damages before it [the plaintiff] would be entitled to recover.''

I have reviewed the latter case at considerable length, as it is the principal case upon which the defendant relies in support of his defense. It is his claim that that case, in general terms, authoritatively states the law to be that a general release executed by the insured at any time would prevent the insurer from recovering any sum from the wrongdoer upon the theory of subrogation or otherwise. A careful consideration of the opinion therein leads me to a different conclusion. It will be noted that the phrase to that effect is used by the court in its decision, quoted above, while considering the effect of the defendants' release *upon the defendants themselves.* In this connection, the court says: '' It is quite clear to me that in any view of the case   *  *  *   the Metropolitan Life Insurance Company, so far as the defendants were concerned, was entirely released and discharged from any and all liability.''

Then immediately following the court speaks of the nature of the claim paid by the landlord as follows: '' This claim does not in any way mention any loss or damage claimed to have been suffered by the defendants by reason of the bursting sprinkler pipe ''— *such damage being the only one covered by the plaintiff's policy.*

I am of the opinion that the *Weinberg* case is to be distinguished in both fact and principle from the case at bar. The former is an action by the insurance company to recover from the defendants (the insured) the amount of $236.01 paid the defendants which it claimed as damages by reason of the release executed by the defendants to the tort feasor, the consideration for such release being $394.90, and which loss the court holds *was not covered by plaintiff's policy, and* for which the wrongdoer was *not responsible.* In the instant case the action is directly against the wrongdoer to recover the amount of the loss paid by plaintiff to the insured, and *which is covered by its policy, and for which* the wrongdoer *is responsible.* Another difference to be noted is that the release by defendants (the insured) to the wrongdoer is for a consideration, viz., the sum of $394.90. In the instant case the evidence fails to reveal that any

consideration was paid whatever for the release from Case to the defendant. The defendant Bleem in this case testifies that Case brought an action against him in the Supreme Court, and that Case gave him a release. There is no testimony that the action was settled and any consideration given for the said release.

The court in the *Weinberg* case emphasizes the fact that the defendants cannot enforce any claim against the insurance company under the policy, on account of their general release; and, to fortify its statement that the defendants, by their own act, had deprived themselves of the right to recover from the insurance company under the policy, states that the insurance company could plead the general release as a perfect defense, since the general release discharged both the claims of the defendants and the insurer. I think this is far from being a statement of law applicable to the case at bar as contended for by the defendant herein. The question of plaintiff's right of subrogation in the *Weinberg* case is not involved as in the instant case before the court. The phrase in question has not the import and meaning that defendant assumes, as I interpret that case, and is but incidental to the discussion and decision therein, and is wholly *obiter dictum.*

The case of *Manley* v. *Montgomery Bus Co., Inc.* (82 Penn. Super. Ct. 530), also cited by defendant, holds that an insurance company which under its contract is entitled to be subrogated to the rights of the insured in the event of payment on its policy, is entitled to participate in any verdict recovered by the insured in an action growing out of the collision. The insured, in bringing action, does so on behalf of the insurer as well as himself, and he *cannot cut out the rights of the insurer by agreement to waive damages for the car which the insurance covered.* The court says: " It is this right of action of which Manley undertook to deprive the insurer by abandoning a part of his claim while he was bound by the equities of the situation and by his own express contract to assert any right which he originally had, not only in favor of himself but at the same time in favor of the insurer for whom he stood with respect to a part of his claim, in the relation of a trustee. The judgment having been obtained in an action in which the whole of the plaintiff's right was asserted, a part of which belonged to the petitioner [the insurance company] here, we are of the opinion that the latter is entitled to be made whole to the extent of the indemnity paid."

In the last-mentioned action, the assured, Manley, received payment of $722 from the insurance company for damages done to his automobile, and thereafter brought action against the defendant bus company for damages both to his automobile and for personal

injuries, but before trial released to defendant his claim for damages to the automobile and proceeded to trial for personal injuries only. The jury returned a verdict in favor of plaintiff for $2,200. The insurance company brought a petition before the court for an award from the amount of the verdict to reimburse it for the sum of $722 paid Manley, the assured, for the damage to the automobile, upon the claim that it was entitled to it by right of subrogation, the court granting the petition and upholding the right of the insurance company, notwithstanding the release made by the insured to the wrongdoer.

It is apparent that the cases referred to above and cited by the defendant may well be cited here as sustaining in principle the contention of the plaintiff in this action, viz., that by payment of the loss called for by its policy it became subrogated to all the right and claims of the assured against the tort feasor, in view of the facts and circumstances of this case. But authority for such proposition does not rest upon the foregoing cases alone. There are numerous citations from various jurisdictions sustaining the principle asserted by the plaintiff in the instant case before the court.

It is well settled that, if a loss under a policy of insurance is occasioned by the wrongful act of a third party, the insurer occupies the position of a surety and the wrongdoer that of a principal debtor, and all the incidents of suretyship attach to the position of the underwriter in such a case, including the right of subrogation.

When a fire loss partially covered by insurance occurs through the negligence of a railroad company, and such company pays the owner of the property the excess of the loss above the amount of the insurance, and takes from him a release in full of all damages caused by the fire, conditioned, however, to operate as such only upon payment by the insurance company, and it, after payment of the residue, brings suit against the railroad company to recover the amount paid, held that the action could be maintained upon the equitable theory of the subrogation of the insurer to the rights of the assured, and in spite of the release executed to the wrongdoer. (*Atchison, T. & S. F. R. R. Co.* v. *Home Insurance Co.*, 59 Kans. 432.) In that case, in the course of its opinion, the court says: " When insured property has been destroyed or damaged by fire occasioned by the negligent act of another than the owner, and the insurer has paid to the assured the amount of the loss or damage, the former becomes subrogated to the position of the latter, and may maintain an action to recover from the wrongdoer the amount which by his contract he was compelled to pay. This as a rule of equity is so well established that particular cases need not be cited in its support or justification."

3

The owner of property destroyed by fire, having been paid the loss by the insurer, cannot recover of the one whose negligence caused it, as the insurer by such payment becomes subrogated to his rights. In *Allen* v. *Chicago & N. W. R. Co.* (94 Wis. 93) the court says: " It is the settled law in this State that the acceptance " by the assured " of payment of his loss from the insurer substituted the insurer in all his rights against the " wrongdoer. " It put the insurance company, in all respects, into the place which " the assured " occupied in relation to his claim against the railroad company, so that it can bring suit   *   *   *   upon his original cause of action, in its own name."

The court further says, when such payment is made by the insurance company, no " right of action remains in the insured; *nor can he, by any act, defeat the right of such insurer.* The acceptance of payment from the insurer operates as a virtual assignment of the cause of action to the insurer, and a part payment operates as an assignment *pro tanto.*"

The courts have been very firm in supporting the right of the insurance company to bring action in the name of the assured, and will not allow the latter to defeat such action even by a release or discharge of the person by whose act the damage was occasioned. (*Swarthout* v. *Chicago & N. W. R. Co.*, 49 Wis. 625; 6 N. W. 314.)

A release by an insured to a wrongdoer whose negligence has caused a loss of insured property, is no defense to a suit by the insurer against the wrongdoer. (*Brighthope R. Co.* v. *Rogers*, 76 Va. 443.) In that case the court says: " We are of opinion, however, that the question [right of subrogation] cannot be regarded as an open one, that the right to maintain such action has been settled by a long train of decisions of the highest courts of England and America.  *  *  *  The doctrine briefly stated is, where the property insured is destroyed by the negligence of a third person, so that the assured has a remedy against him therefor, the insurer by the payment of the loss, becomes subrogated to the rights of the assured to the extent of the sum paid under the policy, and may bring an action in the name of the assured to recover the amount so paid. In such cases the assured stands in the relation of trustee to the insurer to the extent of the sum paid, and he cannot even release the right of action, nor the action itself, if one has been commenced, so as to defeat the claim of the insurer to reimbursement from the wrongdoer for the injury."

Viewing the claim of defendant in its most favorable light, any case, it seems to me, that invokes or suggests a rule, sought by the defendant in this case, that would give effect to a release by insured that would tend to defeat the right of subrogation, the same has

been where the facts reveal that a consideration has passed from the wrongdoer for the damage claimed, and where it appears that said claim is identical with that of the subrogee.

In the case at bar, as has been shown, both these elements were lacking. While the release to defendant herein by the insured is general in its character, if it could have any effect upon the rights of the subrogee, as claimed by defendant herein, it could, if that were possible, only affect them if the same were the subject of the settlement culminating in the release.

The evidence in the instant case is silent as to the nature of the claim of the insured against the defendant. The only evidence upon that subject, as referred to above, is defendant's testimony that an action was brought and the release followed. What the action was for, whether for personal injuries or otherwise, for a consideration or not, is not revealed. It is not established, in fact there is not even a suggestion that such action included the claim paid by the plaintiff herein.

Where a release is so given and general in its terms, and purports to release all claims whether embraced in the suit or not, such provisions of the release as attempt to go beyond the claim in suit and effect a general release of all claims are to be regarded as unauthorized and surplusage. (*Ocean A. & G. Corp.* v. *Hooker Electrochemical Co.*, 240 N. Y. 37.)

The use of the automobile has become so universal and such a general practice in modern life that its use and operation may be assumed to be matters of common knowledge. It is, therefore, generally recognized, particularly by owners and drivers of motor vehicles, that insurance companies issue policies in great numbers to such persons, indemnifying them against damage by accidental collision.

As an owner and driver of a car which caused the injury to the Case car, which is the subject of this action, defendant is presumed to have known or had enough general information which, reasonably pursued, would have given him knowledge of plaintiff's status as an insurer against claims springing from defendant's fault and that it had become subrogated thereto.

In the case of *Ocean A. & G. Corp.* v. *Hooker Electrochemical Co.* (240 N. Y. 37), in reference to what effect a release by the defendant wrongdoer to insured might have upon plaintiff insurer's right of action against defendant under its right of subrogation, the court says: " We think that such settlement * * * did not destroy plaintiff's right to maintain this action. Charged with the knowledge to which we have referred it [defendant] knew that plaintiff occupied the position of subrogee and * * * had acquired a

right of action against it which was not controlled by the insured and which the latter had no right to cancel. The insurer was in no way a party to the settlement and we think that the latter was made subject to its rights and without destruction thereof."

In the latter case a settlement was made by the trustee in bankruptcy of the wrongdoer with the insured after the insurer had paid the insured its claim under the insurance policy. But, as distinguished from the instant case before the court, such settlement was for a consideration and for another and different claim than covered by insurer's policy.

In commenting upon various questions raised as to plaintiff's right of subrogation, the court says that the fact of knowledge on the part of the third party (wrongdoer) that there was an insurer who had become entitled to the right of subrogation would be of decisive importance. The questions in the case arose upon a motion to dismiss the complaint. The court held that affidavits submitted upon said motion permitted a finding that defendant, when it made its settlement with the trustee in bankruptcy of the insured, knew, or possessed information which reasonably pursued would have given it knowledge, of plaintiff's status as an insurer and its right to subrogation.

It seems to me in the case at bar the defendant had such knowledge or information which, if " reasonably pursued," would have given him knowledge of plaintiff's status as an insurer and its claim and right of action, if under any consideration of the facts revealed by the evidence in this particular case, such knowledge be deemed important.

The court in the last-mentioned case, in further discussing the matter of the release as affecting plaintiff's right of subrogation, says: " The insurer was in no way a party to the settlement and we think that the latter was made subject to its rights and without destruction thereof. * * * Such protection against such settlement is afforded to the subrogee by various authorities which hold that such an attempted settlement by the primary wrongdoer is a fraud upon the insurer and will not be allowed to stand as a defense to his action. But by whatever term we characterize the operation it seems to us clear that the primary wrongdoer cannot make with the insured a settlement which will deprive of its known rights the insurer who is not a party to the settlement and has made its payments before the settlement."

Due to the fact that the insured in the case at bar executed the release to the wrongdoer after he had received payment of his loss called for by the policy and the plaintiff had become possessed of all of his claims and right of action against the wrongdoer, it

seems to me, upon principle and authority, said release must be deemed a nullity.

At the time of such payments and subrogation, the rights of the parties became fixed. The insured parted with all his rights, for a complete consideration, that he had against the wrongdoer. At the time he made the release to the latter, he had nothing to convey. Having parted with all his rights, none passed to the defendant under his release.

I am of the opinion that the claim of defendant herein is against the recognized principles of suretyship and subrogation, and, if his contention is correct, that it would have a far-reaching effect upon the practical affairs of the business world. Considered as to the matter of the automobile insurance business alone, it is evident that sweeping changes would be inaugurated as to rights and duties of parties to insurance policies indemnifying the owners of automobiles against loss by reason of accident or collision, resulting in injury to life and property.

The policies of insurance companies covering such loss throughout the land must amount to millions of dollars, and in most, if not all, the right of subrogation is likely reserved over to the insurance company to recoup itself against the wrongdoer for the loss sustained.

If it is possible for the insured to defeat the insurance company's right of action after its payment of the loss called for by the policy, by a release to the tort feasor, there is established a principle of law, I feel, that is not generally recognized by lawyers and laymen alike.

One immediate effect of such a law would probably be a drastic change in rates and conditions of policies of insurance, since the insurance companies would have no recourse against the wrongdoer to recoup their loss from those responsible therefor and who under principles of justice should be made to respond in damages for loss they have occasioned.

I am of the opinion that such a rule is repugnant to the general principles of equity upon which the courts have always held the right of subrogation rests. It tends to enable the wrongdoer to go scotfree and to place a premium upon fraud and dishonesty. In its general results it would be a disturbing factor in the business world, and unsettle those principles of fair dealing among men that make the tort feasor responsible to the creditor and his surety for loss or damage that he alone has occasioned, which principles are the foundations upon which the law of subrogation and suretyship has been erected.

In view of the foregoing, upon the facts and circumstances of the

instant case, I hold that the plaintiff became, upon its payment to the insured, subrogated to all the rights and claims of the latter against the wrongdoer, the defendant herein; that the release of a later date to defendant by insured was in violation of the rights of plaintiff and was incapable of transferring any right to defendant, since all rights had already vested in the plaintiff, both by its payment of the loss called for by the policy by the principle of subrogation reserved therein, and by the assignment by the insured of all his claims and right of action in pursuance thereof. In view of the foregoing, judgment should follow in favor of the plaintiff for the relief demanded in the complaint herein.

Judgment is, therefore, rendered in favor of plaintiff and against defendant for the sum of $571.10, with interest thereon from the 14th day of August, 1926, together with costs and disbursements herein.