### HART v. BIER et al.

(Circuit Court, E. D. Louisiana. May 30, 1896.)

PRINCIPAL AND AGENT—AGENT'S KNOWLEDGE—PARTICIPATION IN ILLEGAL ACTS.

One J. H. filed his bill against B., alleging that his four notes for $25,000 each, together with certain negotiable bonds as security, had been delivered by his agent S. H., to B., without consideration, but, though B. had acknowledged the discharge of all obligations of J. H., he refused to surrender the notes and bonds, or to disclose their whereabouts, and thereupon prayed for a decree awarding him possession thereof. B., in his answer, averred that the bonds were in fact the property of one M. H.; that he, as the broker of said M. H., had become the purchaser of a franchise from the city of N. O.; that, at the request of M. H., he had falsely sworn, in legal proceedings instituted in connection with the sale of the franchise, that he was himself the bona fide owner of the franchise; that he had repeated such false testimony before the grand jury, in order to protect M. H. from threatened proceedings for corrupt dealings with the authorities of the city of N. O.; that the notes and bonds had been furnished to him by S. H., the agent of complainant, in order to corroborate such false testimony, by showing apparent proceeds of a sale of the franchise; and that complainant had knowledge, through his agent, of all these corrupt and immoral transactions. M. H., having been made a party, disclaimed all ownership of or interest in the bonds. The cause being set down on bill and answers, *held*, that the question of ownership of the bonds was settled in complainant's favor by the disclaimer of M. H., and that, as it could not be presumed and was not alleged that the purpose and scope of S. H.'s agency for complainant were unlawful or authorized immoral acts, complainant was not to be charged with the knowledge acquired by his agent while participating in illegal and criminal transactions, and accordingly, not being in pari delicto with defendant, was entitled to the decree sought for the surrender of the bonds.

Rogers & Dodds, for complainant.

Lazarus, Moore & Luce, for defendants.

Before PARDEE, Circuit Judge, and PARLANGE, District Judge.

PER CURIAM. The complainant, Judah Hart, a citizen and resident of the city and state of New York, brought his bill against the defendant Henry Bier and the firm of Lazarus, Moore & Luce, attorneys, and therein alleged that on or about the 22d day of November, 1893, he was the owner of 124 first mortgage bonds of the Municipal Ice Company, of the face value of $1,000 each; that, subsequent to said date, the complainant executed and delivered, through his agent, Samuel J. Hart, to him (Bier) his (complainant's) four certain promissory notes, of the sum of $25,000 each, due and

payable at different dates in the year 1894; that said notes were given without any consideration; that said Bier received from complainant, as collateral security for the payment of said notes, the 124 bonds hereinbefore described, and without any consideration therefor; and that although the said Henry Bier has long since, by receipt in writing, acknowledged the payment and discharge of complainant's obligations, as evidenced by the said four notes, and although the said bonds held as collaterals or in pledge as aforesaid are the sole property of the complainant, and should have been returned to his possession by the said Bier, the said Bier not only refuses to deliver to complainant the said bonds, but also refuses to disclose the present whereabouts of said bonds, or who is now in possession of the same. The bill goes on to show that the defendant Bier was under conviction in the criminal court of the parish of Orleans on the charge of perjury; that the defendants Lazarus, Moore & Luce have been employed to represent the said Bier in an effort to secure a nolle prosequi; that Lazarus, Moore & Luce had given certain advice to the defendant Bier by which he refuses to disclose the whereabouts of the said bonds; that the complainant had reason to believe that Lazarus, Moore & Luce were possessed of them, or knew of their location; that the bonds were negotiable, and the complainant feared that they would be removed from the jurisdiction of the court, or otherwise lost to him; and that he was without a remedy except in equity. Complainant prayed for an injunction, a receiver, and a final decree awarding to him the possession of the bonds described.

Upon a preliminary hearing, Lazarus, Moore & Luce having entered a disclaimer, and as to them the suit having been dismissed, a receiver was appointed by consent, and the bonds were thus taken into the direct custody of the court. After preliminary skirmishing, the defendant Henry Bier filed his answer to the bill, the material parts of which are as follows: That the bonds in question came into his possession from the agent of the complainant, to secure the apparent indebtedness evidenced by the notes described; that the agent of the complainant was under the direction of one Maurice J. Hart; and that the execution of said notes and delivery of said bonds were, as respondent is advised, informed, and believes, with the knowledge of said Judah Hart, who acted through his agent, Samuel J. Hart, and with full knowledge of the matters and things and the objects and purposes of the transaction as hereinafter set forth, and for the purpose of protecting said Maurice J. Hart from civil and criminal liability in transactions hereinafter recited; that, for reasons set forth, the said bonds are the property of Maurice J. Hart, although the name of Judah Hart was employed in the transaction with the full knowledge, consent, and concurrence of the said Judah Hart, by his said agent, said Samuel J. Hart; and that the bonds in question came into the possession of respondent under the following circumstances, which we give in extenso:

"That there was exposed for sale by the common council of the city of New Orleans the extended franchise for fifty years of the New Orleans City and

Lake Railroad; that your respondent was a broker, and, as such, dealt in the securities of said corporation; that said Maurice J. Hart and others interested with him were large operators in the city of New Orleans; that, as such, the said Maurice J. Hart employed respondent to purchase, at the public bidding, the said extended franchise, and agreed to pay respondent, for his services in acquiring the same, the sum of fifteen thousand dollars; that acting under his said employment, and for the compensation aforesaid, your respondent offered to the city of New Orleans the sum of seven hundred thousand dollars for the said extended franchise; that said franchise was adjudicated to respondent for the said sum, and was subsequently confirmed by the common council of the city of New Orleans, and the title to said franchise, for the term aforesaid, awarded to respondent; that, upon its face, the said transaction had all the appearance of being a purchase by respondent, when, in fact and in truth, he was simply a broker or agent in the acquisition thereof; that subsequently, to wit, in the month of ——, 1893, one S. D. Peters, a citizen and taxpayer of New Orleans, instituted proceedings in the civil district court against the city of New Orleans, applying for an injunction against the confirmation of the adjudication to respondent of the said franchise; that said proceeding was allotted to Division C of said court; and that an intervention was filed therein in the name of respondent,—all of which will more fully and at large appear by reference to said suit, No. —— on the docket of the civil district court, to which reference is herein made, and which is to be treated as though set forth in extenso in this answer; that, upon the preliminary trial of said cause, respondent was called upon to testify; that said Maurice J. Hart, in order to protect himself and the future interests that he might have in said franchise, solicited and induced respondent to make the statement in court, under oath, that said franchise was purchased by respondent for his own use and benefit, and for his own account, whereas in truth and in fact, and to the knowledge of both said Maurice J. Hart and respondent at the time, the said franchise, while purchased in the name of your respondent, and apparently for his benefit and account, was not his property, nor had he any interest therein or control over the disposition thereof, except under the direction of said Maurice J. Hart, who had retained and employed respondent to act as a broker in the purchase and acquisition of said franchise, as aforesaid. Respondent, for further answer, saith that in July, 1894, a grand jury was impaneled in the parish of Orleans and in the criminal district court of said parish, and, their attention being attracted to respondent's statements and testimony in the case hereinbefore referred to, they opened an investigation of the same as to their truthfulness, and whether, as a matter of fact, respondent did purchase the said franchise for his own account; and that the said Maurice J. Hart, being advised of the investigation then progressing before said grand jury, appealed to respondent to protect him from any action upon the part of said grand jury, who were at that time investigating the corrupt use of money with the common council of the city of New Orleans in securing contracts and franchises, persuading respondent to maintain, in defiance of the truth and the facts, that respondent was the purchaser for his own account of said franchise; that said franchise had been previously transferred to New Orleans Traction Company, Limited, under the direction of said Maurice J. Hart, who was then, and at the time of the purchase of said franchise by respondent, the vice president of the New Orleans Traction Company, Limited, and the said transfer was made at an advance over the purchase price paid therefor of one hundred and eighty thousand dollars, which advance the said Maurice J. Hart did not give to the said traction company, of which he was a stockholder, director, and vice president, the benefit of, nor any information concerning the fact that he (the said Hart) was the beneficiary of the said one hundred and eighty thousand dollars, and which advance was duly accounted for by respondent to said Maurice J. Hart, save and except the commission which your respondent received for bidding upon and having awarded to him the franchise hereinabove referred to; that in order to give the appearance of truth to the statement that respondent purchased said franchise for his own account and advantage, and that the advance in price as aforesaid was the profit received by respondent for his own account, and that said Maurice J. Hart, vice president of said New Or-

leans Traction Company, Limited, had no interest in the same, the said Maurice J. Hart persuaded and induced respondent to falsify the fact as to the acquisition of said franchise, and put into respondent's possession the four notes hereinabove referred to, secured by the bonds involved in this controversy; that respondent was inquired of by the grand inquest of the parish of Orleans as to the disposition he made of the advance of one hundred and eighty thousand dollars over the purchase price of said franchise, and offered to produce (to show to said grand jury that he was the sole beneficiary of the said advance in price) the said four notes placed in respondent's possession by said Maurice J. Hart, to show that the money so made by the said advance in price was invested by respondent in the notes of Judah Hart, secured by the aforesaid bonds, the purpose of said Maurice J. Hart being, as he himself stated to respondent and others, to support and give the color of truth to the false testimony which respondent was solicited to give, in order to shield and protect the said Hart; that said bonds, while in the possession of respondent and under his control, were only used for the illegal and improper purposes agreed to between respondent and said Maurice J. Hart, to support the false statements made by respondent as aforesaid, and to explain the disposition which respondent is supposed to have made of the profits of one hundred and eighty thousand dollars supposed to have been made by him on the advance in price of the said franchise, as aforesaid."

The answer, after further alleging matter in the same line, not necessary to recapitulate, avers that before a complete decree can be entered in the cause, if a court of equity is competent to grant the relief sought under the facts disclosed in the record, Maurice J. Hart is a necessary and indispensable party to the suit. Maurice J. Hart, who was thereupon made a party defendant, filed his answer, disclaiming ownership of or interest in the bonds in question. The complainant has set the case upon the bill and answers.

We understand the rule to be, where a cause in equity is set down to be heard on bill and answer, that all the matters well pleaded in the bill, and not denied or avoided by the answer, are to be taken as true, and that all matters properly pleaded in the answer responsive to the bill or in avoidance of the same are to be taken as true; and, under this view of the rule, we proceed to examine the merits of this cause.

From the facts stated in the pleadings, we are bound to consider that Judah Hart is the owner of the 124 Municipal Ice bonds, described in the bill, and that the defendant Henry Bier has no interest therein. The answer has a double aspect: First, that the bonds in controversy belong in truth and fact to Maurice J. Hart, and not to Judah Hart; and, second, that the bonds in question came into the hands of the defendant Bier, in pursuance and in aid of an immoral transaction, in regard to which the court should apply the maxim, "In pari delicto potior est conditio possidentis." As to the first matter, the interest and ownership of Maurice J. Hart in and to the bonds in question, the answer and disclaimer of Maurice J. Hart are a complete reply. As to the second proposition, a critical examination of the matters averred in the bill and answer seems necessary, in order to determine exactly what part Judah Hart is shown to have taken in the immoral transaction referred to. In this connection, we take occasion to say that we are not disposed to look into and determine the exact character of the immoral transactions discovered by the answer. In our view, it is immaterial whether the notes were given and the bonds de-

livered to corroborate Bier in perjured evidence or in mere false statements before the grand jury. The bill states that the notes given to Bier, and the delivery of the complainant's bonds as collateral security therefor, were by the agent of said Judah Hart, but does not disclose whether therein the said agent acted within or beyond any authority previously conferred. The allegations in the answer as to the knowledge of Judah Hart, suggested in various forms, and as most strongly stated, amount to this: that the execution of the said notes and the delivery of said bonds were, as respondent is advised, informed and believes, with the knowledge of said Judah Hart, who acted through his agent Samuel J. Hart, and with full knowledge of the matters and things and of the objects and purposes of said transaction; and this, in legal effect, amounts to the assertion that Judah Hart had knowledge, because his agent participated in the transaction, and had full knowledge thereof. Taking this as the full effect of the answer as to Judah Hart's knowledge, it is unnecessary to consider the real difference in probative effect between allegations and affimations based on information and belief and those based on actual knowledge, or the effect of an averment (if any such had been made) that, as defendant is advised, informed, and believes, Judah Hart had actual knowledge, etc.

Conceding, then, the fact to be that the agent of Judah Hart had full knowledge of and participated in the immoral transaction set forth in the answer, the question is, can we, in a case of this kind, apply the general rule that the principal is charged in regard to his business with all the knowledge possessed by his agent? It is presumed in law that the agent communicates to his principal all matters relating to business within the scope of the agency coming to his knowledge, but it must not be forgotten that there are well-defined cases where the presumption fails. Where the interest of the agent conflicts with the interests of the principal, or where the agent colludes with third parties affecting the interests of the principal, and where the agent, participating in criminal transactions beyond the scope of the agency, acquires knowledge of matters affecting the business of his principal, the presumption of notice fails. From the reasons upon which the exceptions to the general rule are maintained, we think it clear that for this case we may safely hold that where an agent participates in illegal transactions or in contracts contra bonos mores, not in the interest of his principal, and not shown to be within the scope of his agency, there is no presumption, in law or otherwise, that the agent communicates to his principal information concerning such illegal transactions or such contracts contra bonos mores. The scope of the agency conferred by Judah Hart upon Samuel J. Hart not being shown, it is presumed to have been within lawful limits. It cannot be presumed to have covered unlawful purposes, or to have authorized immoral transactions. To apply the maxim, "In pari delicto," etc., and refuse a plaintiff relief, it is necessary for the court to find that he has been guilty of turpitude, and frequently of equal turpitude with the defendant, in the matters in-

volved. In the case before us, we are unable to say, from the admitted facts in the case, that the complainant, Judah Hart, had knowledge of the immoral transactions resulting in the delivery of his bonds to the defendant Bier. If the complainant had no knowledge before and at the time his bonds were delivered to the defendant, he cannot be held in delicto, much less in pari delicto; and he is entitled to relief at the hands of the court.

Let a decree go for the complainant.