pleted all the work to which the written contract related, and had rendered to his employer his final bill for that and other work previously performed. He had no office or store, no bill heads or contract forms, no regular employés, no pay roll, and no insurance as an employer. His work was invariably of the artisan's grade; for at least 14 years he had worked continuously as a carpenter, usually alone on individual jobs, and usually by the day or hour. It does not appear that he ever exercised anything approximating superintendence or independent direction of work he was hired to do.

On the forenoon of December 2, 1914, the floors of the employer's building came crashing down upon Bargey's head, killing him instantly. On December 4, 1914, the employer made its report of the injury to the Compensation Commission, and stated therein as follows:

"Was employé injured in course of employment? Yes.
"Occupation when injured? Carpentry work.
"Was injured employé doing his regular work? Yes.
"Piece or time worker? Time worker and contractor."

Questioned by counsel for the insurance carrier, before the Commission, the president of the employer testified:

"Q. What was his (Bargey's) business? A. Carpenter. Q. Anything else than a carpenter? A. He was a contractor."

Undeniably, at the time he met his death, Bargey was working alone, as a time worker by the hour, doing artisan's work, without contract other than that of employment. After comprehensive taking of testimony, the Commission found, as a matter of fact, that the decedent was a carpenter and an "employé" at the time he met his death. The assertion of the insurance carrier that Bargey was not an "employé" within the meaning of the statute cannot be sustained, in the light of the rulings of this court in In re Rheinwald, 168 App. Div. 425; 153 N. Y. Supp. 598, Moore v. Lehigh Valley R. R. (Sup.) 154 N. Y. Supp. 620, In re Powley (Sup.) 154 N. Y. Supp. 426, and similar cases.

Precedent and common sense alike place within the purview of the Compensation Act this claimant's husband and the work he was doing when death ended his service as a wage-earner. We find no reasons for alteration of the views maturely expressed by this court in the Powley, Moore, and Rheinwald Cases.

The Commission's determination as to the claim at bar is abundantly sustained by the evidence, and the award should be affirmed.

---

FITCH, CORNELL & CO. v. ATCHISON, T. & S. F. RY. CO.

(Supreme Court, Appellate Division, First Department.    December 3, 1915.)

1. CARRIERS ⊂⇒57—FRAUD—BILL OF LADING—LIABILITY—INTERSTATE COMMERCE ACT.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 386, § 20, as amended by the Carmack Amendment (Act June 29, 1906, c. 3591, § 7, 34 Stat. 595 [U. S. Comp. St. 1913, § 8592, pars. 11, 12]), requiring a railroad receiving property for interstate transportation to issue a bill of lad-

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing therefor, and making it liable to the holder thereof for any loss or injury to such property caused by it, and providing that nothing shall deprive the holder of any remedy under existing law, defendant, whose station clerk issued a false bill of lading, for goods never received, to a produce company, whose draft, forwarded for collection, was paid by the consignee upon receipt of the bill of lading, was not liable to the consignee for the balance of the draft, as reduced by a payment on account by the produce company, on the ground of fraud, where it appeared that the station agent might issue bills of lading only for, or to cover, goods actually received for transportation, and that he was not authorized to delegate his power to issue bills of lading, since there was nothing to connect defendant either directly or inferentially with the fraud.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 169–178, 308, 309, 311, 312; Dec. Dig. ☞57.]

2. PRINCIPAL AND AGENT ☞181—KNOWLEDGE OF AGENT—FRAUD.

Knowledge acquired by an agent in the commission of a fraud upon his principal, alone or with others, does not charge the principal with notice, since the agent is acting adversely to his interest, and it will not be presumed that such knowledge will be communicated to the principal or used for his benefit.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 690; Dec. Dig. ☞181.]

3. CARRIERS ☞47—STATION AGENTS—AUTHORITY—BILLS OF LADING—LIABILITY TO THIRD PARTIES—RATIFICATION—PRESUMPTION.

A station agent, authorized to issue bills of lading only for, or to cover, goods actually received for transportation, could not authorize or ratify his clerk's false issuance of a bill of lading for goods not received; nor would proof that the clerk and the station agent had been engaged in such fraudulent conduct for a considerable time raise a presumption that such conduct had been brought to the attention of, and ratified by, the railroad, as the presumption in such case would be that the fraudulent conduct had been concealed from the responsible officers of the railroad.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 107, 108, 134–141, 204; Dec. Dig. ☞47.]

Appeal from Trial Term, New York County.

Action by Fitch, Cornell & Co. against the Atchison, Topeka & Santa Fé Railway Company. From a judgment dismissing the complaint at the close of plaintiff's case, it appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

C. E. Thornall, of New York City, for appellant.
Walker D. Hines, of New York City, for respondent.

McLAUGHLIN, J. Action to recover damages sustained by reason of the alleged fraud of the defendant in issuing a false bill of lading. The plaintiff, at the time stated in the complaint, was a commission merchant in the city of New York. On September 5, 1908, the C. T. Wells Produce Company, of Arkansas City, Kan., drew a draft on plaintiff for $3,000 and forwarded the same for collection, through a bank in Kansas, to the National Bank of Commerce in New York City. Stamped across the face of the draft were the words: "Hold draft for arrival of bill of lading." Upon receipt by the bank of the draft, it was presented for acceptance to the plaintiff, which was refused, on the ground that the bill of lading had not been received.

On September 15, 1908, one Krebs, a clerk in defendant's employ at Arkansas City, Kan., whose duty it was to check the goods put into a car and then seal the car, signed, in the name of one Ingham, the station agent at that place, a bill of lading for 150 tubs of butter and 250 crates of eggs, and delivered the same to the produce company. The butter and eggs were consigned to the plaintiff in New York City, to which the produce company forwarded the bill of lading thus issued. After the bill of lading was received by the plaintiff the bank again presented the draft and the same was accepted and paid. The bill of lading proved to be false; the butter and eggs referred to therein never having been received by the defendant. Subsequently the produce company paid the plaintiff $1,500 on account of the amount advanced on the draft, and thereafter went into bankruptcy. The plaintiff then brought this action to recover the balance of the draft—$1,500, with interest—on the ground that the railroad company was liable therefor by reason of its fraud in issuing the bill of lading, when in fact the butter and eggs had not been received for shipment.

At the beginning of the trial defendant moved to dismiss the complaint, upon the ground that under the Carmack Amendment to the Interstate Commerce Act (Act June 29, 1906, 34 Stat. 584, c. 3591, § 7) the action could not be maintained. The court reserved its decision upon the motion until the close of plaintiff's case, when it was renewed and granted. Judgment was subsequently entered, dismissing the complaint, from which the plaintiff appeals.

[1] I am of the opinion the complaint was properly dismissed. At the outset it may be observed that the draft did not, in specific terms, at least, refer to the bill of lading here involved, and except for the fact that both instruments are numbered 3075, there is nothing to indicate they are in any way related to each other; on the contrary, it would seem to follow, from the fact that the draft is dated September 5, 1908, and the bill of lading September 15th, that the words stamped across the face of the draft, "Hold draft for arrival of bill of lading," could not have been understood to refer to the bill of lading which was subsequently issued. But assuming, for the purpose of disposing of the question presented, that the words quoted did refer to the bill of lading, and were so understood by the plaintiff, I am still of the opinion that the trial court properly dismissed the complaint, and for the reasons given.

Prior to the Carmack Amendment, to which reference has been made, the liability of a common carrier upon bills of lading for interstate commerce, as well as intrastate shipments, was determined by the rules of the common law or statute law of the state in which such liability was sought to be enforced. Pennsylvania Railroad v. Hughes, 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268; Chicago, etc., Railroad v. Solan, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688; Hart v. Pennsylvania Railroad, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717. By that amendment, however, Congress not only regulated the issuance of interstate bills of lading, but also established the carrier's liability thereon. The effect of this amendment was clearly stated by Mr.

Justice Lurton in Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257. He said:

"That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it. * * * The duty to issue a bill of lading and the liability thereby assumed are covered in full, and, though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject."

The bill of lading issued involved interstate commerce, since it related to the shipment of a product from one state to another, and the liability of the defendant had to be determined, as the court held, under the Carmack Amendment. The appellant, however, insists that it did not relate to interstate commerce, since the butter and eggs referred to were never received by the defendant; that the action is not predicated upon a bill of lading involving interstate commerce, but, on the contrary, is to recover damages for fraud and deceit—that is, upon a false representation, upon which plaintiff relied and parted with its money; and in support of the contention that the action may be maintained, attention is called to Bank of Batavia v. N. Y., L. E. & W. R. R. Co., 106 N. Y. 195, 12 N. E. 433, 60 Am. Rep. 440. But that authority does not hold that an action to recover damages for fraud and deceit may be maintained. It is simply to the effect that where a principal has clothed his agent with power to do an act, and a third person dealing with such agent, in entire good faith, pursuant to the apparent authority conferred, relies upon the representation, the principal is estopped from denying its truth, to the prejudice of the third party. This is quite a different proposition from holding that where an agent issues, contrary to instructions and without the knowledge of his principal, a false bill of lading, the latter may be held on the ground of fraud. Here Ingham was clothed with authority to issue bills of lading, but by specific instruction "only for, or to cover, goods actually received for transportation." Nor was he, so far as appears, authorized by defendant to delegate his power to issue bills of lading to another.

[2] But, even if it be assumed that he could authorize Krebs to issue a bill of lading, the latter committed a fraud, because the butter and eggs had not been received, and his act did not bind the defendant. Before one can be held liable for a fraudulent act, he must in some way be connected with it, and there is nothing in the record to connect the defendant, either directly or inferentially, with Krebs' act in issuing the bill of lading in question. Knowledge of the station agent, Ingham, or Krebs, cannot be imputed to the defendant. It is a well-recognized principle of law that knowledge acquired by an agent in the commission of a fraud upon his principal alone, or upon his principal and a third person, does not charge the principal with notice, since the agent is acting adversely to his interests, and it will

not be presumed that such knowledge will be communicated to the principal or used for his benefit. American Surety Co. v. Pauly, 72 Fed. 470, 18 C. C. A. 644; s. c., 170 U. S. 159, 18 Sup. Ct. 552, 42 L. Ed. 977.

[3] It is also urged that the court erred in refusing to submit to the jury the question whether defendant did not ratify the act of the agent, Krebs, in issuing the bill of lading without the goods being received. This contention is based upon the testimony of Krebs to the effect that he was authorized by his superior—Ingham—to issue bills of lading without the receipt of goods, and that this method had been pursued for some time. The testimony of Krebs to the effect that his act was authorized by Ingham seems to me to be immaterial, because a false bill of lading issued by Ingham would have been of no more effect than a false bill of lading issued by Krebs; in other words, Ingham could not authorize or ratify an act of Krebs which he himself could not do. Nor could proof by Krebs that he and Ingham had been engaged in such fraudulent conduct for a considerable period of time raise a presumption that such fraudulent conduct had been brought to the attention of and ratified by the company itself. The presumption in such case would be that such fraudulent conduct was concealed from the responsible officers of the defendant. A case directly in point is Eccles v. Louisville & Nashville R. R. Co. (D. C.) 198 Fed. 898.

In any view, therefore, it seems to me, for the reasons stated, the complaint was properly dismissed. It follows that the judgment appealed from is affirmed, with costs. All concur.