FIRST TRUST & DEPOSIT COMPANY, Appellant, v. MIDDLESEX MUTUAL FIRE INSURANCE COMPANY, Respondent.

Fourth Department, March 13, 1940.

*Hiscock, Cowie, Bruce & Lee* [*H. Duane Bruce* of counsel], for the appellant.

*Hart, Senior & Nichols* [*A. G. Senior* of counsel; *Morgan F. Bisselle* with him on the brief], for the respondent.

HARRIS, J. On the trial of this action the court below, after hearing all of the proof, granted motions for orders of nonsuit dismissing the first and second causes of action as alleged, and directing a verdict of no cause of action for the defendant on the alleged third

cause of action. From the judgment entered on such orders and from an order denying the defendant's motion to set aside the verdict and for a new trial, the plaintiff appeals to this court.

By suit herein the plaintiff endeavors to secure the return to it of a sum of money ($1,587.20) which was paid out by it to one E. Pratt Keiner, a member of a copartnership engaged in selling insurance, whose place of business was located at Gloversville, N. Y. The investment corporation never transacted business directly with the defendant, but the plaintiff (standing in the shoes of its assignor) claims to be entitled to reimbursement from the defendant on two grounds: (1) that the copartnership of which Keiner was a member, in selling to the investment corporation the note hereinafter described, did so as the agent of the defendant; and (2) that by its acts and failure to act the defendant was estopped from denying the claim of the plaintiff.

The money, the return of which the plaintiff seeks, was paid by its assignor, Syracuse Investment Corporation, under the following set of circumstances:

The investment corporation is what is commonly known as a finance company and among its lines of business it has one of purchasing the notes of insureds given in part payment of premiums for insurance policies. Some notes are purchased from companies, some from brokers and some from agents. The business of the investment corporation is obtained by solicitation of the holders of the notes.

The defendant, a Massachusetts fire insurance corporation, authorized to write business in this State, had from June 10, 1932, and during all of the times of events on which this action is being based, properly designated the copartnership of which Keiner was a member as its agent with full authority to bind risks, to countersign and issue policies of insurance, and to collect premiums. Following the law and the requirements of the State Insurance Department, and in order to secure the consent of such Department to the agency transacting business, the defendant had certified to the Department the good reputation and the integrity of the copartnership. The defendant had furnished to, and left in the possession of the copartnership, policies in blank signed by the proper officers and riders and reports, with authority in all proper cases to sign and to make use of such documents.

On June 30, 1936, Keiner delivered to the investment corporation on a policy blank of the defendant what is apparently a policy of insurance issued by the defendant (No. 794447) covering an assured named J. J. O'Donnell against loss by fire to merchandise contents located in the rear of No. 56 to 60 West Fulton street,

Gloversville, N. Y. With such policy there was delivered to the investment corporation an instrument dated May 29, 1936, which appeared to be a note which contained the following words and figures:

" For Value Received, the undersigned promise to pay to BATTY AND KEINER or order, Fifteen Hundred Eighty-Seven and 20/100 Dollars ($1587.20) in installments as set forth in the Schedule of Payments, at the office of Syracuse Investment Corporation, 121 East Genesee Street, Syracuse, New York.

" The obligation of the maker hereof is for premiums on insurance policies issued by Middlesex Mutual Fire Insurance Co., No. 794447.

Schedule of Payments

$158.72  1 month after date
$158.72  2 months after date
$158.72  3 months after date
$158.72  4 months after date
$158.72  5 months after date
$158.72  6 months after date
$158.72  7 months after date
$158.72  8 months after date
$158.72  9 months after date
$158.72 10 months after date

Rec'd June
30, 1936
( Agent's Memo.

| | |
|---|---|
| Premium........................................ | $1984.00 |
| Paid to Agent................................... | 396.80 |
| Balance to be Financed........................ | 1587.20 |
| Service charge................................. | 79.36 |

" In consideration of the payment or assumption of payment by the payee hereof to the respective insurance company, agent or broker, of the premiums for which this installment note is given, the payor hereby assigns to the payee any unearned premium to which he may become entitled under said policy or policies.

" In the event of a default in the payment of any installment set forth in the Schedule of Payments, or in the event of the insolvency or bankruptcy of the payor, or the appointment of receivers for his, their or its property, prior to the payment in full, in cash, of this note, the amount of this note, or any balance thereof, unpaid shall be due and payable immediately to the payee, and if not immediately paid, the payor agrees for himself, themselves, or itself, his personal representatives, successors or assigns, that such failure

to pay shall be construed as notice to cancel said policy of insurance and the payee may deliver said policy to the insurance company issuing same for cancellation and receive any and all return premiums thereon and receipt therefor in the name of the payor. Said payor agrees that pending the payment of this note or the cancellation of said policy as above that he, they, or it, will not do or permit anything to be done to or with said insurance policy contrary to this agreement. In the event of any claim which will require the surrender of said policy without unearned premium for which this note is given, then this entire note becomes immediately due and payable and any moneys to become payable under said policy shall, so far as the unpaid amount of this note, be and is assigned to the payee and be paid to the payee with the right of the payee to receipt therefor in the name of payor. The payee accepts no liability as an insurance carrier and is holding said policy of insurance solely as collateral security.

" Payor appoints Syracuse Investment Corporation attorney-in-fact irrevocable, to sign, execute and /or deliver in name of payor any and all papers necessary at any time to carry into effect this agreement. This agreement inures to the benefit of the payee and his /its assignees and /or transferor.

" Signature JOSEPH O'DONNELL<br>" Assured

" Address
 " 56 West Fulton St., Gloversville, N. Y."

Coincident with the delivery of the policy and with such note, there was also given to the investment corporation a certificate as follows:

" To SYRACUSE INVESTMENT CORPORATION,
 " Syracuse, New York

 " For the purpose of inducing you to purchase the within note, the undersigned certifies and warrants that said note arose on account of the issuance of Policy Number 794447 and that the undersigned is the sole owner of said note; and that there is no defense to said note and the same is valid and the amount set forth therein is unpaid, and that there are no offsets or counterclaims to the same, and, for value received, the undersigned hereby sell, assign and transfer unto Syracuse Investment Corporation of Syracuse his or its or their right, title and interest in and to the within note and the insurance policy therein transferred, and hereby authorize said Investment Corporation to do every act or thing necessary to collect and discharge the same, and to collect any return premium on account of cancellation of policy therein

mentioned and any moneys to be paid on account of said policy of insurance as therein mentioned.

" IN WITNESS WHEREOF said undersigned has hereunto subscribed his, its or their name this 29th day of May, 1936.

" (Signed) BATTY AND KEINER<br>" E. P. KEINER

" Witness

" Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" SYRACUSE INVESTMENT CORPORATION

    " Syracuse, New York

" You are hereby authorized to pay $. . . . . . the proceeds of the within contract, to the respective insurance companies or their authorized agents as indicated by policies deposited as security and listed in the contract.

" (Signed) . . . . . . . . . . . . . . . . . . . . . . . . . . .<br>" Broker "

Policy No. 794447 covered non-existent property, was never issued at the request of the therein named insured and no knowledge was ever conveyed to the defendant of the issuance of the policy. The plaintiff claims that the knowledge of the agent-copartnership was the knowledge of the defendant. This was not an isolated transaction of the investment corporation with the copartnership; and although some of the transactions between the investment corporation and the copartnership involved properly issued policies on existent coverages, a great many transactions between the investment corporation and the copartnership included policies on the forms of the defendant, and of other companies, involving non-existent property and fictitiously named owners. So far as such fictitious policies were concerned, the transactions were handled by Keiner, personally, without the knowledge of anybody else in the office of the copartnership, and in issuing such policies Keiner used the maiden name of his wife, that of a classmate, or those of non-existent persons, as the insured. In each instance when he did this Keiner furnished to the investment corporation a note, a policy and an assignment and certificate of warranty, as he did in the case before us.

It was the practice of the copartnership in reference to the business of the defendant, as was similarly done in the practice of the defendant and other insurance companies, to make a daily report to the defendant, or other interested insurance company, of the policies written that date, which daily report, under the instructions of the insurance company, was forwarded to a rating bureau and in turn forwarded by the bureau to the insuring company's main office. In a transaction in which Keiner would deliver a fictitious policy

and note for premiums, he would send to the rating bureau, to be forwarded to the defendant, a report showing the issuance of a similarly numbered policy but covering an existent piece of property, and usually for the amount of $1,000 on a house at the address given in the report, and for a term of three years. Such fictitious policies were issued for a term of one year and no information concerning them ever reached the defendant until the criminal actions of Keiner were discovered by the investment corporation. By mere accident the investment corporation ascertained that something was wrong. On the discovery of the fact that the transaction which took place on June 30, 1936, and which is the basis of this action, was a fraudulent transaction, the plaintiff presented the policy in its possession to the defendant and demanded that it be canceled and the return premium paid to the plaintiff. This demand was refused and the action was started.

The investment corporation, in making these loans on fictitious paper, at all times dealt directly with the insurance agents and never with the insured and never directly with the insurer company. In making the loans the investment corporation never made any investigation of the authenticity or validity of the policy or of the insured or of the note. It relied entirely upon the fact, which was a matter of public record, that the copartnership was an authorized agent to write business for the defendant and on the further fact that the defendant was a reputable and financially secured corporation. This confinement of its investigation as to the stability of the company and the authority of the agent is claimed by the plaintiff to have been sufficient inquiry on the part of the investment corporation. The information as to each policy written in the State was available at underwriting bureaus located at various points in the State, one in the city of Syracuse, where the investment corporation had its office. There was also available to any one desiring to purchase the service credit reports on persons seeking insurance coverage. Each time that the defendant received a policy from its agent it had the same checked by the rating bureau and secured a mercantile report on the insured. This the investment corporation did not do.

The first cause of action alleged in the amended complaint was based on a claim for return premium on policy No. 794447, above described. If such policy had been issued, the plaintiff, as the assignee of the insurance agent, would have been entitled to cancel the same and to receive the return premium. Fire insurance policies are assignable as collateral. (*Griffey* v. *N. Y. C. Ins. Co.*, 100 N. Y. 417.) The permission in the premium note, permitting the investment corporation to cancel the policy, was sufficient as

an authorization to the investment corporation to cancel the policy on behalf of the insured. (*C. P. I. Co.* v. *Ætna Ins. Co.,* 127 N. Y. 608.) In these conclusions, as to the assignability of the policy and the right to cancel, I do not agree with the contention of the defendant that such a policy as that in question was not assignable. However, the assignment of a policy presupposes that there is a genuine policy existing and in the case before us the policy in question was fictitious. The policy being non-existent, there could be no obligation on the part of the defendant to repay a premium on a policy that was never issued, and so the claim for repayment of premium must fall. (Insurance Law, § 122, as in effect at the time of the transaction in suit; *Bentley* v. *Columbia Ins. Co.,* 17 N. Y. 421; *Garrow* v. *Lincoln Fire Ins. Co.,* 152 Misc. 423; *Union Insurance Co.* v. *American Fire Insurance Co.,* 107 Cal. 327; 40 P. 431.) The contention of the plaintiff that the defendant by its actions and omissions has placed itself (the defendant) in a position which prevents its having a valid defense to the claim of the plaintiff, is based as follows: The issuance of authority to the copartnership to write policies for the defendant, the certification of the good repute and integrity of the copartnership by the defendant, the placing into the possession of the copartnership of blank policies and other similar instruments, signed by the proper officers of the defendant, and the failure of the defendant to ascertain that Keiner was using such papers to issue fictitious policies. The investment corporation, in soliciting business directly from the defendant, had sent a form letter to the defendant which form letter stated that it was doing business with the copartnership. There were discrepancies in the daily reports sent by the copartnership to the defendant and a claim is made that the defendant was careless in checking the return of the blanks to the defendant. I cannot see where any failure of the defendant to check discrepancies can be the basis of a claim by the plaintiff. The defendant did not need to anticipate the criminal acts of Keiner, because such criminal acts (the writing of the fictitious policies and the writing of fictitious notes) would not be what a principal could ordinarily anticipate from its agent. (*Deyo* v. *Hudson,* 225 N. Y. 602; *Fitch, Cornell & Co.* v. *Atchison, T. & S. F. R. Co.,* 170 App. Div. 222; affd., 226 N. Y. 597; *Reimel* v. *Northwestern Trust Co.,* 298 Penn. St. 503; 148 A. 706; *Hart* v. *Bier,* 74 Fed. 592.) The fact that the principal placed the signed blanks in the hands of the agent would create a liability on the part of a principal, if the placing of such blanks enabled the agent, while apparently acting within his authority, to commit a fraud upon third persons. (Restatement, Agency, §§ 261, 262.) The plaintiff herein may not invoke the

protection of the rules as stated in sections 261 and 262 because information as to the dubious acts of Keiner was as available to the investment corporation as it was to the defendant, and even more so because the investment corporation was dealing directly with Keiner in these transactions and the defendant had no knowledge of these transactions. If the theory of estoppel were to be invoked it should be invoked against the plaintiff's assignor, because the use of the slightest of reasonable precautions by such assignor would have saved the damage and loss complained of in this action. (*Bay Parkway Nat. Bank* v. *Shalom*, 270 N. Y. 172.)

Most important of all in deciding the merits of the alleged causes of action is the conclusion that must be reached by an examination of the note and certificate above set forth. That note and such certificate were given in a transaction on behalf of the copartnership as an entity, or on behalf of ostensibly insured, or on behalf of the investment corporation, and not in behalf of the copartnership as agent for the defendant.

In this transaction neither Keiner nor the copartnership acted on behalf of the defendant, and neither Keiner nor the copartnership acted under an apparent authority given by the defendant. There was no liability on the defendant herein to the assignor and, therefore, there is no liability on the defendant to the plaintiff herein.

The judgment and order of the court below are proper and should be affirmed, with costs.

All concur. Present — CROSBY, P. J., CUNNINGHAM, DOWLING, HARRIS and McCURN, JJ.

Judgment and order affirmed, with costs.