■ DANIEL ROSENBLATT, Respondent, v WASHINGTON COUNTY COOPERATIVE INSURANCE COMPANY, Appellant, et al., Defendants. [594 NYS2d 456] —Levine, J. Appeal from an order of the Supreme Court (Dier, J.), entered March 26, 1992 in Washington County, which, *inter alia,* denied defendant Washington County Cooperative Insurance Company's motion for summary judgment dismissing the complaint against it.

Plaintiff, a New York City resident, owns farm property in Washington County on which several buildings are situated in addition to the farmhouse. In January 1987, following a fire in one of the buildings, plaintiff's property insurance carrier, Travelers Insurance Companies (hereinafter the Travelers), sent plaintiff a notice of cancellation of his homeowner's policy on the property. Plaintiff sought to obtain new insurance coverage and ultimately came into contact with defendant Peter Rademacher, an insurance agent with defendant Jerome E. Wright, Inc., an insurance agency authorized to act on behalf of defendant Washington County Cooperative Insurance Company (hereinafter WCCIC).

According to plaintiff's testimony at his examination before trial (hereinafter EBT), plaintiff told Rademacher that he wanted "full coverage" on all buildings, "to be covered as best

[he] could be on the property". On February 3, 1987, Rademacher orally informed plaintiff that he had bound WCCIC to a comprehensive homeowner's policy for the property, effective that date. Plaintiff further testified at the EBT that he received a telephone call from Rademacher on February 5, 1987 informing him that, upon an inspection of the premises that day, he found that the roof of the swimming pool building had collapsed from accumulated snow and that plaintiff's new insurance with WCCIC did not cover that type of risk. Plaintiff submitted additional proof that, although Rademacher ascertained from the caretaker of the property that the collapse of the roof occurred after the February 3, 1987 effective date of the binder he issued on behalf of WCCIC, Rademacher offered a bribe to the caretaker to state that the collapse occurred before February 3, 1987, which the caretaker rejected. Finally, according to plaintiff, without his consent WCCIC subsequently altered his written application for insurance from one for a homeowner's policy to a pure fire insurance policy not containing coverage for the risk of a roof collapse due to accumulated snow, and issued such a policy to plaintiff.

After WCCIC refused to pay plaintiff's claim of loss, plaintiff brought this action setting forth causes of action based upon breach of contract, negligence and bad faith, i.e., a conspiracy among defendants to avoid plaintiff's actual insurance coverage for his loss in connection with the collapse of the roof of the swimming pool building. Plaintiff also seeks punitive damages.

During the pretrial discovery stage of this action, plaintiff brought a separate suit against the Travelers on the same loss, alleging defective notice of cancellation of plaintiff's policy. On November 6, 1990, after plaintiff was granted summary judgment in that action declaring that the cancellation of the Travelers policy was ineffective, plaintiff stipulated to the discontinuance of his action against the Travelers and executed a general release in exchange for the immediate payment of $22,500 in cash and the delivery of an annuity paying plaintiff $30,000 on November 1, 1992.

While several discovery demands by plaintiff against WCCIC were outstanding, WCCIC moved for summary judgment dismissing the complaint or, in the alternative, so much thereof as sought punitive damages, on the following grounds: (1) that at most, plaintiff was entitled to recover the conceded cash value of the swimming pool building of $50,506.04 and had already received from the Travelers a total of $52,500 for the

same loss, thus barring any award in this action as a duplicate recovery, (2) that the proof established that plaintiff never obtained insurance coverage from WCCIC for the type of loss he sustained, and (3) that the proof of bad faith of defendants was insufficient as a matter of law to support any award of punitive damages. The remaining defendants cross-moved for the same relief. Plaintiff submitted opposing papers and cross-moved for summary judgment and for enforcement of his discovery demands. Supreme Court denied all parties' summary judgment motions, finding unresolved questions of fact, and ordered all defendants to comply with plaintiff's discovery demands. This appeal by WCCIC followed.

It is true, as WCCIC argues, that the Travelers' payments of $22,500 in November 1990 and $30,000 two years later on the same loss constitute a setoff to plaintiff's claim in this action, and would be a complete defense if equal to plaintiff's total right of recovery (see, Rankin v Travelers Ins. Co., 254 App Div 687; Camden Fire Ins. Assn. v Bleem, 132 Misc 22, 28-34; 71 NY Jur 2d, Insurance, § 1870, at 294). WCCIC, however, has not submitted prima facie proof that the aggregate amount plaintiff received from the Travelers satisfies his entire claim. WCCIC's policy provides that a loss is "payable 45 days after a satisfactory proof of loss is received". Plaintiff was, therefore, entitled to interest on all unpaid balances of the agreed cash value of the swimming pool building ($50,506.04) from the date the loss was payable as set forth in the policy (see, Farmland Mkt. Corp. v North Riv. Ins. Co., 105 AD2d 602, affd on mem below 64 NY2d 1114; Tri County Pawn Brokers v American Employers' Ins. Co., 46 AD2d 746; Anchor Toy Corp. v American Eagle Fire Ins. Co., 11 AD2d 109, 112, affd without opn 13 NY2d 627; see also, St. Joseph Light & Power Co. v Zurich Ins. Co., 698 F2d 1351, 1356-1357; Polito v Continental Cas. Co., 689 F2d 457, 460-461). WCCIC's submissions do not establish that the Travelers' payments equal the cash value of plaintiff's loss plus the interest payable thereon.

Triable issues also are presented respecting WCCIC's defense that plaintiff never obtained coverage for the risk of the collapse of the roof from snow accumulation. Plaintiff testified at the EBT that he asked Rademacher, WCCIC's agent, to obtain "full" or "the best" coverage for the buildings on his property, and that Rademacher indicated on February 3, 1987 (before the loss) that he had bound WCCIC to a comprehensive homeowner's policy immediately effective. This evidence could support an inference that a temporary oral contract of insurance had been formed covering the risks commonly included

in WCCIC's most comprehensive homeowner's policies *(see, Hicks v British Am. Assur. Co.,* 162 NY 284, 288-289; *Cardinal v Mercury Ins. Co.,* 242 App Div 98, 102, *revd on other grounds* 266 NY 448; 2 Couch, Insurance § 14:16 [2d ed]).* At one point in the EBT of an officer of WCCIC, he testified that WCCIC did issue policies covering the type of loss involved here. The documentary proof claimed to contain the terms of the WCCIC homeowner's policies, submitted through the affidavit of its attorney having no firsthand knowledge of the facts, was insufficient to establish conclusively that WCCIC did not offer a policy with such risk coverage. Thus, Supreme Court was correct in denying summary judgment dismissing the complaint against WCCIC.

We agree, however, with WCCIC that plaintiff has not established prima facie proof of conduct on WCCIC's part of sufficient culpability in denying plaintiff's claim to subject WCCIC to the imposition of punitive damages *(see, Tate v Metropolitan Life Ins. Co.,* 186 AD2d 859, 860; *O'Dell v New York Prop. Ins. Underwriting Assn.,* 145 AD2d 791, 792). The invidious inferences plaintiff seeks to have drawn from the subsequent change of his insurance application from one for a homeowner's policy to that of a fire insurance policy are speculative and essentially irrelevant. Concededly, the dispositive issue here concerns the risks covered under the binder agreement of February 3, 1987, and this is uneffected by any changes regarding insurance policies issued subsequent to the loss. The only remaining misconduct of WCCIC relied upon by plaintiff on his claim for punitive damages is the alleged unsuccessful attempt by Rademacher to bribe plaintiff's caretaker. Clearly, plaintiff was not injured by Rademacher's futile offer, if any, and the record is entirely devoid of any evidence that WCCIC authorized or ratified any bribery attempt by Rademacher. Under such circumstances, WCCIC cannot be held responsible for the alleged criminal acts of its agent *(see, First Trust & Deposit Co. v Middlesex Mut. Fire Ins. Co.,* 259 App Div 80, 87-88, *affd* 284 NY 747; *Anderson v Metropolitan Life Ins. Co.,* 128 Misc 144, 145, *affd* 220 App Div 779; 68 NY Jur 2d, Insurance, § 486, at 608).

Mikoll, J. P., Mercure, Mahoney and Casey, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant Washington County Cooperative Insurance Company's motion regarding plaintiff's claim for punitive damages; motion granted to that extent, summary judgment awarded to said defendant and

claim for punitive damages dismissed; and as so modified, affirmed.