OPINION OF THE COURT
 

 Levine, J.
 

 Plaintiff Standard Funding Corporation, an insurance premium financing company, entered into a series of financing agreements with Lewitt Agency, Inc. to finance the premiums on insurance polices of defendant Public Service Mutual Insurance Company. Standard Funding had provided Lewitt with its financing agreement forms which Lewitt and the prospective insureds were to complete and sign. Before entering into the first financing agreement with Lewitt, Standard Funding contacted Public Service Mutual whose personnel confirmed that Lewitt was an agent in good standing with the company, licensed to sell all lines of business.
 

 Pursuant to the financing agreements, Standard Funding would finance the bulk of an insured’s initial insurance policy premium in exchange for a security interest in all unearned premiums. The insured would agree to repay Standard Funding on an installment schedule; if the insured defaulted, the financing agreement gave Standard Funding the authority to cancel the insurance policy and assert a right to all unearned premiums due under the policy.
 

 At issue on this appeal are four such agreements that Standard Funding and Lewitt entered into in October and December 1989 to finance premiums ranging from $15,500 to $153,500 for policies purportedly issued by Public Service Mutual. On
 
 *549
 
 October 20, 1989, Lewitt tendered two executed financing agreements to Standard Funding. Each form, which was signed by Lewitt and the insured, indicated that Public Service Mutual had issued policies to the insureds and that the insureds had paid approximately 25% of the premiums to the insurance company. Standard Funding accepted the financing agreements, and in accordance with their terms, issued two checks to Lewitt totaling $23,325. Standard Funding then sent Public Service Mutual "Notice of Financing” forms containing copies of the checks issued to Lewitt. In mid-December, Lewitt completed two additional financing agreements for the financing of Public Service Mutual premiums and received two checks from Standard Funding in the total amount of $204,000. Again, Standard Funding sent notice of financing forms with copies of the checks to Public Service Mutual. Public Service Mutual did not respond to any of the notices.
 

 After Standard Funding failed to receive payments from the alleged insureds, it contacted Public Service Mutual who investigated the matter and discovered that these four financing agreements covered fictitious policies and false insureds. No policies were ever issued in connection with these agreements and Public Service Mutual received no premiums for them. Public Service Mutual thereafter terminated Lewitt’s agency contract.
 

 Standard Funding commenced this damages action against Lewitt and Public Service Mutual. The claim against Public Service Mutual was premised on the theory that the insurer was liable for the fraudulent acts of Lewitt acting as its agent. After Lewitt filed for bankruptcy, the claim against Public Service Mutual proceeded to trial. Following a nonjury trial, Supreme Court entered judgment in favor of Standard Funding in the amount of $227,325 plus interest. The Appellate Division affirmed, holding that although the financing agreements between Lewitt and Standard Funding were outside the scope of Lewitt’s actual authority, Standard Funding had reasonably relied upon Lewitt’s authority to issue Public Service Mutual policies and collect premiums in tendering its checks to Lewitt, and thus, Public Service Mutual was liable under the doctrine of apparent authority. Because we conclude that Lewitt had neither actual nor apparent authority to enter into the financing agreements on behalf of Public Service Mutual, we now reverse.
 

 There is no basis to conclude that the agency contract between Lewitt and Public Service Mutual endowed Lewitt with
 
 *550
 
 actual authority to procure on behalf of Public Service Mutual the financing of premiums for proposed insureds. The agency agreement granted Lewitt authority to "solicit and accept proposals for insurance covering such risks as the Company may authorize to be insured in the [agent’s] territory * * * subject [to] all the terms, covenants and conditions of this agreement.” Under the terms of its agency agreement, Lewitt was also endowed with "full power and authority to receive, collect and receipt for premiums on insurance tendered by the Agent to and accepted by the Company.” Thus, Lewitt was expressly authorized only to issue insurance policies and to receive and collect premiums; nothing in the agency agreement authorized Lewitt to negotiate or enter into premium financing agreements on behalf of Public Service Mutual.
 

 We reject plaintiffs contention that premium financing is an activity incidental to or reasonably necessary for the performance of those express powers. In the case of
 
 First Trust & Deposit Co. v Middlesex Mut. Fire Ins. Co.
 
 (284 NY 747,
 
 affg
 
 259 App Div 80), on facts strikingly similar to those presented here, we held that an insurance agent’s frauds perpetrated in the context of premium financing were not within the scope of the agent’s actual authority
 
 (see also, National Premium Budget Plan Corp. v National Fire Ins. Co.,
 
 106 NJ Super 238, 241-242 [App Div], 254 A2d 819, 820,
 
 cert denied
 
 54 NJ 515, 257 A2d 113;
 
 Cupac, Inc. v Mid-West Ins. Agency,
 
 626 F Supp 559, 562-563;
 
 contra, New England Acceptance Corp. v American Mfrs. Mut. Ins. Co.,
 
 4 Mass App 172, 344 NE2d 208, 212-213,
 
 affd
 
 373 Mass 594, 368 NE2d 1385).
 

 In
 
 First Trust (supra),
 
 a copartnership acted as agent for the defendant insurance company for whom it was authorized to issue insurance policies and collect premiums. As required by law, the insurance company had certified to the State Insurance Department "the good reputation and integrity of the copartnership” as its agent (259 App Div, at 82). Just as Lewitt here, the agency in
 
 First Trust
 
 tendered a fictitious insurance policy and instrument of indebtedness to an institution engaged in premium financing and vouched for their genuineness. When both the policy and the debt instrument turned out to be fraudulent, plaintiff, as assignee of the financing company, sought recovery from the insurance company on an agency theory.
 

 The Appellate Division rejected plaintiffs argument that the insurance agent had been acting as agent for the defendant insurance company in procuring premium financing for proposed
 
 *551
 
 insureds. Instead, the Court held that the debt instrument and warranty "were given in a transaction on behalf of the copartnership as an entity, or on behalf of ostensibly insured, or on behalf of the investment corporation,
 
 and not in behalf of the copartnership as agent for the
 
 defendant”
 
 (id.,
 
 at 88 [emphasis supplied]). This Court agreed, affirming "on the ground that the fraud of the defendant’s agent was not perpetrated in the course of the agent’s employment” (284 NY, at 748). Likewise here, we hold that Lewitt’s activities in entering into the premium financing agreements with Standard Funding fall outside the scope of activities authorized by its agency agreement.
 

 Nor do we find any record support for a determination that Lewitt had apparent authority to enter into or procure financing agreements on behalf of Public Service Mutual. "Essential to the creation of apparent authority are
 
 words or conduct of the principal,
 
 communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction”
 
 (Hallock v State of New York,
 
 64 NY2d 224, 231 [emphasis supplied];
 
 accord, Greene v Hellman,
 
 51 NY2d 197, 204;
 
 Ford v Unity Hosp.,
 
 32 NY2d 464, 472-473). In such circumstances, the third party’s reasonable reliance upon the appearance of authority binds the principal
 
 (Hallock v State of New York, supra,
 
 64 NY2d, at 231;
 
 Ernst Iron Works v Duralith Corp.,
 
 270 NY 165, 170).
 

 Public Service Mutual made no representations regarding Lewitt’s authority to procure on its behalf premium financing for its proposed insureds. Rather, Public Service Mutual’s representations were limited to Lewitt’s power to write insurance policies and accept premiums for them. Moreover, all representations in the premium financing agreements were purely those of the agent. The financing agreements set forth the obligations of the insured and contained a warranty clause entitled "Brokers and/or Agents Representations and Undertaking” whereby the signatory agent or broker agreed to "warrant ] the validity of this agreement and the truth of the facts contained therein,” including the genuineness of the insured’s signature and the fact that an individual policy had been issued. The only signatures required on the form were those of the "Broker or Agent” and the "Insured.” Correspondingly, the checks issued by Standard Funding pursuant to the financing agreements were payable solely to Lewitt. Under these circumstances, the very terms of the agreements belie Standard Funding’s allegation that from its perspective, Lewitt appeared to be acting as agent for Public Service Mutual.
 

 
 *552
 
 The only explicit representation Standard Funding can point to in order to establish apparent authority is Public Service Mutual’s certification that Lewitt was an agent in good standing authorized to write all lines of business for it. In
 
 First Trust (supra),
 
 however, where the insurance company had certified to the State Insurance Department "the good reputation and integrity of the copartnership” as the insurance company’s agent, the Appellate Division held this very type of representation insufficient to support application of the doctrine of apparent authority (259 App Div, at 82, 87-88). We agree with the reasoning of that Court and hold that, in merely confirming Lewitt’s good repute and status as an agent to write insurance policies, Public Service Mutual did not clothe Lewitt’s representations in the premium financing agreements with apparent authority
 
 (see, Ford v Unity Hosp.,
 
 32 NY2d, at 473,
 
 supra).
 

 Finally, plaintiffs reliance on the fact that Public Service Mutual received notices of financing as a basis for imposing liability on Public Service Mutual is also unavailing. The notices of financing stated that payment from Standard Financing was "subject to your acceptance of the terms and conditions of the premium finance agreement.” It is undisputed that Public Service Mutual never signified any acceptance of the terms and conditions of the financing agreements, as the notices required. Thus, no express ratification by Public Service Mutual ever took place
 
 (see,
 
 Restatement [Second] of Agency § 82 and comment
 
 a
 
 [principal may become liable for its agent’s unauthorized acts by adopting the agent’s actions and electing to become a party to the transaction]). Moreover, the rule that ratification may be implied where the principal retains the benefit of an unauthorized transaction with knowledge of the material facts
 
 (see, Deyo v Hudson,
 
 225 NY 602, 614,
 
 rearg denied
 
 226 NY 685; 2 NY Jur 2d, Agency, §§ 170, 171, 173), has no application here, since it is undisputed that Public Service Mutual received no premiums or any other benefit in connection with the fraudulent financing agreements.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the complaint against Public Service Mutual dismissed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order reversed, etc.