## CHESAPEAKE & O. RY. CO. v. RINGSTAFF.

### No. 6327.

Circuit Court of Appeals, Sixth Circuit.

Nov. 17, 1933.

Lewis Levy, of Cincinnati, Ohio (Galvin & Tracy, of Cincinnati, Ohio, on the brief), for appellant.

J. D. Andrews, of Hamilton, Ohio (Baden & Fiehrer and Andrews, Rogers & Scott, all of Hamilton, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Action by appellee, Ringstaff, to recover damages of appellant, the Chesapeake & Ohio Railway Company, for personal injuries.

The questions properly preserved and presented by the record are whether the court erred (1) in denying appellant's motion for a directed verdict; (2) in excluding from the evidence one of appellant's rules relating to station agents and train conductors; and (3) in declining to submit to the jury a requested instruction relating to contributory negligence.

Appellee was injured between 1 and 2 o'clock p. m. on June 10, 1929, when a freight

train of appellant upon which he was riding was derailed. He insisted that at the time of his injury he was a passenger, and was therefore entitled to that high degree of protection applicable to such status.

Upon the motion for a directed verdict, the determinative question was whether there was substantial evidence tending to show that appellee occupied a passenger relationship to appellant.

Appellee accounted for his presence upon the train as follows:

He testified that some months before the accident he was employed by appellant as a laborer in a work train gang doing various kinds of track work; that immediately prior to the date of his injury he, with other laborers, was engaged in laying rails near Boston, Ind.; that, on Monday before the day of the accident on June 10 he had requested the timekeeper, Calhoun, to procure a pass for him upon one of appellant's passenger trains from Boston to Cincinnati, where he lived; that he intended to use this pass on June 10; that on that morning he went to the station at Boston with two objects in view, first, to have Calhoun identify him as the payee of a pay check he was to receive there; and, second, to get his pass from Calhoun for the 9 a. m. passenger train to Cincinnati, where he intended to remain until the night of June 11, at which time Calhoun was to meet him at the Fourth street depot of appellant to give him a pass for himself and ten other men over appellant's line to Miami, Ohio, where the work gang was to resume work. Appellee testified that on the morning of June 10 he saw Calhoun at the station in Boston, and that Calhoun explained that he had forgotten to bring the pass, that it was up at the cars, and that he did not then have time to get it before train time; that Calhoun went into the station at Boston to see Cheney, the station agent (also called ticket agent), and asked him when the next train left; that the agent told him 96, a time freight train from Chicago to Cincinnati, and due in Boston between 12 and 1 o'clock; and that Calhoun had the agent flag 96 for appellee.

Appellee's account of what happened is confusing and contradictory. He stated that he did not hear the conversation between the agent, Cheney, and Calhoun, but that Calhoun came out of the station with a yellow piece of paper and flagged train 96; that Calhoun handed this piece of paper to the engineer and said, "Take this boy to Cheviot," Cheviot being a station on appellant's line in the suburbs of Cincinnati. Subsequently appellee testified that it was the agent and not Calhoun who gave the paper to the engineer and requested him to "take this boy to Cheviot."

Appellee gave a third version of the transaction, which we quote as follows: "On June 10th Calhoun gave the agent a little piece of yellow paper. He gave that to the engineer. Calhoun went in to the depot agent. I didn't say that Calhoun give the agent that paper. Calhoun gave the engineer a small piece of paper. Calhoun got the depot agent to write it and take me on this train. The depot agent went out along the side of the engine and gave it to the engineer and he handed him this piece of paper and said 'take this boy to Cheviot.'"

The yellow paper is not in the record, and its contents were not disclosed; but, viewing appellee's testimony in the light most favorable to him, we infer that this paper was in the nature of a pass or at least a written request that appellee be carried upon train 96 from Boston to Cheviot, and that either Calhoun or Cheney flagged the train and presented the paper to the engineer. Appellee did not testify that the engineer said or did anything other than to receive the paper, but he did testify that, as he started to mount the engine, a brakeman, standing in the door, told him to walk back about ten cars to a gondola car in which he could ride to Cheviot; that the brakeman went with him to the car, which was an empty steel coal car, and that upon the direction of the brakeman he climbed in and sat down, and was riding there when the derailment occurred. Two other men who were riding with him were uninjured and ran away.

The train consisted of the engine, fifty-three cars, and the caboose. The engineer, fireman, head brakeman, flagman, and conductor constituted the crew. When the derailment occurred, the conductor was in the caboose at the rear of the train. He had not been asked by any one to permit appellee to ride, and he was unaware of appellee's presence on the train.

Appellee's account of the facts culminating in his injury was unusual.

It is undisputed that he had on no prior occasion been given a pass upon a freight train; that all previous passes used by him were upon passenger trains; that the pass he was expecting June 10 was for transportation upon a passenger train; that, when employees of appellant had occasion to use the trains, the rule was to transport them upon

passenger trains, that freight trains were never used for that purpose, and that Calhoun, the timekeeper, had never before issued a pass for any one to ride upon any train. Appellee did not testify that the pass he was expecting on June 10 was issued by Calhoun. The inference is that appellee had requested Calhoun to procure this pass from the proper authority, and that Calhoun had done so, but had forgotten to bring it to the train.

Construing all the evidence in a way most favorable to appellee, and disregarding all countervailing evidence, as we are required to do in considering whether the motion for peremptory instructions should have been granted, we think that appellee has failed to make a case of legal liability. The question is one of authority of appellant's agents, who, as appellee claimed, directed him to board the train. An agent's express authority extends no farther than that which the principal gives him in direct terms. His implied authority embraces nothing except the powers necessary to carry into effect the purposes of the agency. The evidence affirmatively shows, beyond dispute, that neither the timekeeper nor the station agent had authority, express or implied, to issue passes to, or request free transportation for, workmen upon freight trains; that neither the engineer nor the brakeman had express or implied power to receive workmen as passengers, and it is manifest that a brakeman on a freight train is without authority to direct a would-be passenger to a seat in an empty gondola car.

Further, the evidence indisputably shows that it was not within the scope of the apparent duties and powers of these employees, individually or jointly, to pass appellee upon the freight train. Their apparent authority cannot be determined by what they said or did. It must be traced by appellee to some act or conduct of appellant, and the record discloses that appellant never knowingly permitted its station agents, timekeepers, engineers, or brakemen to represent that they had such power or ever held them out as possessing it. In this state of the evidence the trial court should have directed a verdict for the appellant—in view of which it is unnecessary to determine whether the court erred in declining to submit a requested instruction upon contributory negligence.

Appellant complains that the court declined to allow the introduction of one of its rules relating to station agents and train conductors. This rule is printed in the margin,[1] and should have been introduced. It tended to confirm appellant's insistence that the station agent had no authority to issue a pass to appellee upon its freight train, and that appellee occupied no higher position than a trespasser whose carriage had been expressly forbidden.

The judgment of the District Court is reversed, and the case remanded for a new trial.

---

[1] "Passengers must not be carried on freight trains without proper authority; tramps or other trespassers must not be allowed to ride; and precaution must be taken to prevent cars from being robbed while in transit."