106 N.J. Super. 238 (1969)
254 A.2d 819
NATIONAL PREMIUM BUDGET PLAN CORPORATION, A CORPORATION OF THE STATE OF MICHIGAN, PLAINTIFF-APPELLANT,
v.
NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, A CORPORATION OF THE STATE OF CONNECTICUT, LOUIS J. MARTONE, EDWIN M. ROTHBERG, AND PRICE AGENCY, A PARTNERSHIP COMPOSED OF LOUIS J. MARTONE AND EDWIN M. ROTHBERG, AS CO-PARTNERS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 12, 1969.
Decided July 3, 1969.
*240 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Andrew S. Polito argued the cause for appellant (Messrs. Mattson, Madden, Polito & Loprete, attorneys).
Mr. Mark D. Larner argued the cause for respondent National Fire Insurance Company of Hartford (Messrs. Budd, Larner, Kent & Gross, attorneys).
Mr. Victor E.D. King argued the cause for respondent Edwin M. Rothberg (Messrs. King and King, attorneys; Mr. Victor R. King, of counsel).
PER CURIAM.
The nature of the action, the issues and the general factual background are fully delineated in the opinion of the trial court. 97 N.J. Super. 149 (Law Div. 1967).
Plaintiff sued defendants ("National Fire" and Edwin M. Rothberg) for damages sustained on loans it made to finance *241 premiums on insurance policies supposedly issued by National Fire when the loan moneys were feloniously misappropriated by one Martone, insurance agent for National Fire. Eight of the loans were placed by Martone as the agent who purportedly wrote the policies, and two by Price Agency (for which Martone and Rothberg had once filed a partnership certificate) as purported writing agent.
National Fire was sued on theories of respondeat superior for Martone's fraud as agent, and for its own negligence through acts of office employees. Rothberg was sued on the theory of liability of a partner for acts of a copartner assertedly done within the scope of the partnership business.
The decision of the court, sitting without a jury, on the facts and the law, was for defendants National Fire and Rothberg. (Martone was also a defendant, but does not appeal from the judgment against him.)
We have concluded the judgments should be affirmed, although we do not necessarily agree with all of the findings or inferences of fact or all the conclusions of law set forth in the very lengthy opinion of the trial court.
We address our attention to the appellate arguments.

I
Plaintiff's major contention as against National Fire was that the latter is liable on principles of respondeat superior for the fraud of its agent Martone. Martone was an ordinary insurance agent for National Fire. We are satisfied he was not its agent when arranging premium loans in connection with its policies. For that purpose he was the agent alone of his insureds, and he was also acting on his own behalf to obtain the advantages flowing therefrom. True, National Fire encouraged all its agents to arrange for financing premiums for insureds needing such financing since this was good for the business of both the company and the agent. But it is one thing for the company to encourage such activity by its agents, another for it to get into the premium financing *242 field on its own account. We agree with the trial court's conclusion that there was neither express nor implied agency of Martone for National Fire in the former's premium financing activities.
Nor do we find liability against National Fire on the principle of apparent agency. National Fire did not knowingly (or at all) voluntarily place Martone in such a situation that a prudent person, conversant with business usages in relation to premium financing, would be justified in assuming that Martone had authority to act for it in arranging such loans. See C.B. Snyder Realty Co. v. Nat'l Newark, etc., Banking Co., 14 N.J. 146, 154 (1953). Moreover, plaintiff did not rely on any such apparent agency, a requisite for application of the principle. Restatement, Agency 2d, § 265, p. 575 (1958). Its reliance was, as the trial court justifiably found, solely on the verification acknowledgment cards it sent out to the company.
Plaintiff belabors the point that unjustified reliance on the misrepresentation by the plaintiff-victim is not a proper basis for the defense of contributory negligence to an action for fraud and deceit. This is generally so, but is beside the point of the present issue, i.e., whether National Fire is vicariously liable as principal for another's fraud on the theory of apparent agency. In that special context, reliance by the third person on the apparency of the asserted agency is ordinarily essential for liability.

II
Plaintiff alternatively relied on the theory of National Fire's direct negligence (1) through the acts of its mail clerks in turning over plaintiff's letters addressed to the company, concerning premium loans, to Martone; and (2) in inadequately supervising such clerks so as to permit such occurrences. The trial court never explicitly passed on this question, obviating it by its conclusion that plaintiff was barred from recovery on this theory by its own contributory negligence.
*243 The facts, in our opinion, could well have supported a finding that there was actionable negligence, considered apart from the defense of contributory negligence. However, we need not develop that thought as we agree that there was contributory negligence on the part of plaintiff which played a causative role in its loss and that this factor barred the action in its negligence aspect.
We do not agree with all of the subsidiary findings of basic fact and as to factual inferences upon which the trial court relied in arriving at the general conclusion of contributory negligence (e.g., plaintiff's failure to inquire of the New Jersey Department of Banking and Insurance as to Martone's status or authority; what the verification procedures of one of plaintiff's leading competitors were). But we do conceive that as to most of such findings there is enough in the record to support them on review, and that on the whole, in composite, they warranted a factual conclusion that plaintiff's damage was the proximate result of its own imprudent conduct, even assuming that some of the circumstances relied on below, taken in isolation, would not necessarily imply negligence.
Plaintiff also argues that events occurring after the making of the "loan" transactions on which it sustained losses are not imputable to its knowledge, as of the time of such transactions, insofar as such knowledge is material to the issue of contributory negligence. However, we find the court's ultimate conclusion of contributory negligence to be justified on the basis of plaintiff's knowledge and activities even as of the date of the first fraudulent transaction on which it took a loss (January 1962). (Martone had by then put through some ten previous fraudulent transactions, but he ultimately paid those off in full.)
For example:
(a) In January 1960, when Martone submitted his first fraudulent transaction, the premium financed was $17,170, almost eight times larger than any other National *244 Fire premium financed by plaintiff through any agent in any state.
(b) Martone instructed plaintiff to send all the assured's mail directly to his agency.
(c) Although the verification card was purportedly signed by C.E. Perrin, "Supervisor, Acct's. Dept," (actually a forgery), it was postmarked Newark (branch office) rather than Hartford (home office). This arguably should have made plaintiff wonder why a supervisor of the accounts department was stationed in a branch or service office; moreover, this was the first verification card ever returned to plaintiff by National Fire from an office other than Hartford or Chicago (their principal regional executive offices).
Martone then submitted two wholly legitimate transactions, both for premium amounts less than $1,000 and with acknowledgment cards signed by an underwriter, but not postmarked at all. He followed this with an "illegitimate" transaction in which a policy was issued (and paid off in full by him) but never delivered to the assured. The premium on this contract was below $2,000 and the verification card was signed by an underwriter and returned from Hartford. Thus, this transaction and the two legitimate ones preceding it followed the normal pattern as to size of loan and origin of verification established on National Fire contracts other than those produced by Martone.
On December 5, 1960 Martone submitted his second fraudulent loan application, which was the first of an uninterrupted string of 18 such contracts before his fraud was discovered. Again, this contract differed from the norm and arguably should have alerted plaintiff in that:
1. The premium financed was $11,250, almost 6 times greater than any other non-Martone, National Fire contract.
2. The premium amount was also much greater than usual for Martone's policies. Only the first fraudulent transaction had been for a comparably high amount.

*245 3. As in the first fraudulent transaction, the assured's mail was to be sent c/o L. Martone, and the possibility of interception pursuant to a fraudulent scheme or of the nonexistence of an actual assured was debatedly apparent.
4. The policy was described as casualty although National Fire had previously merged with Continental Casualty Co. and had stopped writing casualty after the merger.
5. Most importantly, the verification card was signed by William A. Bray, Manager, and was postmarked East Orange. This was only the second time that any card concerning National Fire policies had been returned from an office other than Hartford or Chicago and the very first time any card was signed by a person purporting to be merely a manager.
The next transaction, submitted almost exactly one month later, was again for an unusually high amount (over $12,000); again it was requested that mail be sent c/o L. Martone Agency, and again there was a verification card signed by Manager Bray and postmarked East Orange. Moreover, the purported signature of Bray was wholly and obviously dissimilar to that on the preceding card. Had plaintiff compared the signatures, its suspicion might well have been aroused.
The remainder of the fraudulent transactions which were fully paid off (and are thus not in suit) contained similar departures from the norm in amount of premium, postmarked on the verification card, and "signature" by Manager Bray. In addition, on one of these the signature on the verification card was W.E. Bray, whereas Bray's middle initial on all previous cards had been "A," and the first name had always been spelled out. Since most men do not forget their middle initials, and since most businessmen keep their business signature constant, it could reasonably be found that this should have concerned plaintiff and prompted further inquiry.
*246 Other matters which might have warned plaintiff of danger were: (1) the similarity of addresses of the assureds to Martone's address (on all but one of the fraudulent transactions not in suit the assured's mailing address was either 512 Park Ave., 516 Park Ave., or a post office box), (2) the nonsequential and relatively random numbering of policies supposedly written within a short time of each other by the same agent; (3) the fact that Nicholas Martone and Louis Martone signed two of the contracts for company assureds; (4) the fact that all payments on all of these high-premium contracts were made by Martone rather than the assured, although plaintiff's general experience was that assureds paid the premiums directly 80% of the time, and (5) the fact that virtually no payments were made on time and numerous late notices and preliminary cancellation notices had to be sent out by plaintiff.
From the above discussion it is clear that plaintiff could reasonably have been found by the trial court, as fact-finder, to have been forewarned of danger well before the consummation of any of the transactions now in suit, and thus properly adjudged, even as of that time, lacking in the prudence of an ordinary person engaged in the same business under the circumstances.
The subsequent accumulation of further indicia of carelessness by plaintiff throughout the year of the fraudulent loss-transactions (January 1962 to January, 1963), is catalogued in the trial court's opinion, 97 N.J. Super., at pp. 172-180. We are in substantial agreement with it.
We thus sustain the trial court's conclusion of contributory negligence as a defense to the action in its negligence aspects.

III
Plaintiff urges that, in respect of the two loans submitted to it under the purported aegis of Price Agency, defendant Rothberg was personally liable for the fraud of his partner Martone.
*247 The trial court appears to have decided this claim against plaintiff on the ground that no partnership between Rothberg and Martone ever existed. We affirm on the alternative grounds either that no partnership came into existence or that if it did, it had been terminated by implicit agreement of the supposed partners and total cessation of partnership operations well before the loan applications here involved were presented to plaintiff. The findings of fact by the trial court in relation to the partnership, 97 N.J. Super., at pp. 169-171, are found supported by the proofs, and as a matter of law they support either of the alternative conclusions stated above. See N.J.S.A. 42:1-29, 33, 35. See Silberman v. Angert, 101 N.J. Eq. 477 (Ch. 1927); Lang v. Hexter, 137 N.J. Eq. 100 (Ch. 1945), affirmed 138 N.J. Eq. 478 (E. & A. 1946).
Plaintiff argues also that Rothberg can be held under the theory of partnership by estoppel, arising from the public filing of the trade name (partnership) certificate, pursuant to N.J.S.A. 42:1-16. While this section, on its face, appears to harbor some ambiguity in relation to whether the plaintiff must have relied on the public filing, cf. West Side Trust Co. v. Gascoigne, 39 N.J. Super. 467 (App. Div. 1956), we have concluded that a proper construction of the statute renders such reliance a requisite of liability. We are so persuaded by the cogent analysis of this section of the Partnership Act by Judge Larner in Reisen Lumber & Millwork Co. v. Simonelli, 98 N.J. Super. 335, 339-343 (Law Div. 1967) (decided subsequent to the trial court's decision in the instant matter), which we herewith approve and adopt. Reliance by plaintiff on the public filing being absent here, Rothberg cannot be held by plaintiff on any principle of partnership by estoppel.
Judgments affirmed.