BAKER AND COMPANY, FLORIDA,
Plaintiff-Appellee,

v.

PREFERRED RISK MUTUAL
INSURANCE COMPANY,
Defendant-Appellant.

No. 76–1726.

United States Court of Appeals,
Fifth Circuit.

March 24, 1978.

James A. Becker, Jr., Velia Ann Mayer, Jackson, Miss., for defendant-appellant.

Thomas W. Crockett, Jr., Lester F. Smith, Jackson, Miss., for plaintiff-appellee.

Before WISDOM, GODBOLD and CLARK, Circuit Judges.

CHARLES CLARK, Circuit Judge.

The ultimate question here is an old one: Which of two innocent parties must suffer a loss caused by the dishonesty of a third? Baker and Company sued Preferred Risk Mutual Insurance Company because of the unauthorized, fraudulent actions of Preferred Risk's agent, William Carpenter. Baker lost $68,602.23 in its dealings with Carpenter. A properly instructed jury returned a verdict for $41,814.53, the amount of Baker's loss it could have found to have been caused by the acts of Carpenter which were within his implied actual authority. We affirm.

After a period of employment as an agent in Preferred Risk's Jackson, Mississippi, office, Carpenter was transferred to a Columbus, Mississippi, insurance agency which had been purchased by Preferred Risk. In Columbus, Preferred Risk rented an office and employed a part-time secretary for Carpenter. It supplied Carpenter with standard agency application forms for fire and automobile insurance, policy change requests, binders and receipts. Carpenter's contract of employment authorized him to solicit insurance business for Preferred Risk in the Columbus area on a non-exclusive basis. Carpenter's stated contractual authority was as follows:

1. The PREFERRED RISK MUTUAL INSURANCE COMPANY (hereinafter, the Company) does hereby appoint the party signatory to this contract (hereinafter, the Agent) as its limited agent to solicit for said Company acceptable applications for insurance and to render such service to policyholders of the Company as may properly and reasonably be given by an Agent of the Company subject to regulations and instructions contained in the manuals, articles of incorporation, by-laws, or other instructions or modifications thereof, as may from time to time be promulgated by the Company, including the terms and conditions of this contract, for those purposes only.

2. Nothing contained herein is intended or shall be construed to create the relations of employer and employee.

He was licensed by the State of Mississippi as a Preferred Risk representative. Although Carpenter did not have the authority to issue policies, Preferred Risk did confer upon him the right to issue binders which would have the effect of creating insurance coverage for a period of 30 days.

Baker and Company engaged in the business of financing insurance premiums. Premium financing involves an advance by the finance company to the insurance company or its agent of the premium due for the full term of the policy. This advance is then repaid by the insured to the finance company in amortized monthly installments which include an additional amount to cover financing charges. The finance company is secured in making this advance payment by obtaining the right to cancel the policy and to receive the return premium due upon cancellation if timely repayments are not made.

To promote their business, Baker employed a representative to contact insurance agents throughout Mississippi and urge them to use Baker to service their customers who wished to finance premiums. Baker's representative supplied these agents with a Baker premium financing kit consisting of instructions and forms to accomplish the financing. Included in each kit were forms referred to as the "Power of Attorney" letter. This letter described the advance payment which Baker had made on a specific policy of insurance, stated that the premium on this policy was being financed by Baker, and requested the company to list Baker on its records as "Power of Attorney to request cancellation of the policy if the terms of the [financing] contract are not complied with." Acknowledgement by the insurance company to Baker on a copy of the form was requested. Carpenter was one of many Mississippi insurance agents contacted by Baker's representative and supplied with premium financing kits.

Carpenter conceived and executed a scheme whereby he would make up fictitious insureds, purport to issue policies to them, finance the premium with Baker, obtain payment of the premium specified to himself, direct Baker to send the "Power of Attorney" form to Preferred Risk at his own address, and wrongfully acknowledge receipt of Baker's "Power of Attorney" letter for Preferred Risk.

Preferred Risk never expressly conferred authority on Carpenter to perform such an acknowledgement function in its behalf. Indeed, Preferred Risk gave Carpenter no instructions on premium financing procedures, though it concedes that Carpenter had authority to perform premium financing. Between January and June of 1973, Carpenter confected 146 fraudulent premium financing transactions. He processed the documents in Preferred Risk's office and used its part-time secretary to prepare them. For several months Carpenter made lump sum payments to Baker to meet installments due and keep the fraud concealed. No part of the premium financing income received by Carpenter on any transaction was ever forwarded to Preferred Risk. The state manager for Preferred Risk, on a routine visit to their Columbus office, discovered the scheme and terminated Carpenter's agency. As the fraudulent financing transactions became delinquent on Baker's records, it gave notice of cancellation under its "Power of Attorney" and demanded the return premiums. Preferred Risk refused the demand and this action resulted.

All of Carpenter's bogus transactions involved financing an annual term policy despite the fact that Preferred Risk wrote only six-month term policies. Apparently, at the beginning of the scheme's operation, some policies may have actually been issued, but the bulk of the transactions were total frauds in which no binder or policy ever issued, the insured was fictitious, and the acknowledgement by Preferred Risk of Baker's "Power of Attorney" letter was either issued improperly by Carpenter or never received by Baker. Most of the letter forms Baker did obtain contained no policy numbers. Many of them specified one of two common post office boxes as the address of the insured. Some addresses were in care of Carpenter's agency. Baker never requested a copy of Carpenter's agency agreement or communicated with anyone representing Preferred Risk other than Carpenter.

Preferred Risk mounts a multifaceted attack comprising 12 assignments of error. They assert that the court should have directed a verdict, that the jury was improperly instructed, that its verdict is against the overwhelming weight of the evidence, that Baker had failed to qualify to do business and was barred from suing, and that the transactions were usurious. All of its assertions of error are without merit.

■ The record discloses that a jury issue was presented under the standard of *Boeing Company v. Shipman*, 411 F.2d 365, 373–77 (5th Cir. 1969) (en banc), both as to Carpenter's implied actual authority and apparent authority to acknowledge premium financing notices for Preferred Risk. Carpenter was Preferred Risk's agent with

undisputed actual authority to operate an insurance agency in an office rented by Preferred Risk, utilizing a secretary employed in part by the company. He was also actually authorized to solicit insurance business for Preferred Risk, to issue binders obligating the company to cover risks for periods up to 30 days, to notify lending institutions that such coverage existed, to perform services for customers, and to engage in premium financing. It was properly left for the jury to conclude whether these powers implied an actual authority to acknowledge premium financing notices.

■ It was likewise proper for the court to submit the issue of Carpenter's apparent authority to perform this function to the jury. Although an agent's out-of-court actions cannot create apparent authority, the fact that Baker dealt with Carpenter alone does not foreclose the possible existence of apparent authority. Here the proof was replete with acts of Preferred Risk which invested Carpenter with agency credentials. It is these acts of the principal which the court correctly left to the jury to weigh.

■ There is no doubt that the exercise of any of several reasonable precautions by Baker would have detected Carpenter's fraud or curtailed the losses it caused. This fact forms the principal thrust of a number of Preferred Risk's attacks on the court's instructions. All of these efforts expend themselves on the Mississippi rule that contributory negligence is not an available defense to fraud. *Billups Petroleum Company v. Hardin's Bakeries*, 217 Miss. 24, 63 So.2d 543 (1953); *Nash Mississippi Valley Motor Company v. Childress*, 156 Miss. 157, 125 So. 708, 709 (1930).

No issue existed that Carpenter's actions were not fraudulent. The undisputed proof established that beyond cavil. Preferred Risk's attack on the court's failure to require the jury to apply the clear and convincing standard to determine this non-issue is frivolous.

An isolated attack is made on an instruction that the secretary's knowledge that Carpenter was engaging in premium financing could be charged to Preferred Risk is equally meritless. Preferred Risk admitted such financing was within Carpenter's express authority.

■ Preferred Risk seeks to fault the court for its refusal of three instructions it tendered which (1) would charge Baker with any knowledge its agent had or should have had that Carpenter could not acknowledge Baker's "Power of Attorney" letters for Preferred Risk, (2) instruct that Baker could not rely solely on Carpenter's acts to establish apparent authority, and (3) instruct that Carpenter's acts outside the general scope of his employment were not binding on Preferred Risk. These attempts all fail because the instructions given made it precisely clear to the jury that to return a verdict for Baker it must find (1) Carpenter had actual or apparent authority to acknowledge Baker's letters, (2) Carpenter's authority had to flow from Preferred Risk's express or implied authorizations or Baker had to be reasonably justified in concluding that apparent authority existed, and (3) Carpenter's actions in acknowledging receipt of Baker's letters regarding financing were within the scope of any actual or apparent authority so found. In short, the court's instructions, considered as a whole, properly instructed the jury so that they understood the issues to be tried and were not misled. *First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1316 (5th Cir. 1977). A party is not entitled to have the jury instructed in the particular language of its choice. *Fleming v. Michigan Mutual Liability Company*, 363 F.2d 186, 198–90 (5th Cir. 1966).

■ Finding no error in the court's instructions, we can find no fault in the jury's resolution of the facts. Abundant evidence exists to support a finding of implied actual authority on Carpenter's part to acknowledge receipt of Baker's "Power of Attorney" letter.

■ Preferred Risk's final assignments of error also fail. Baker's action arose from its transactions in interstate commerce. *Allenberg Cotton Company, Inc. v. Pittman,*

419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974), has eliminated the contention that a failure to qualify with a state before transacting business there denies access to its courts. Usury was never proven and counsel for Preferred Risk so conceded at oral argument.

The judgment appealed from is
AFFIRMED.