CUPAC, INC., Plaintiff,

v.

MID–WEST INSURANCE AGENCY,
INC., et al., Defendants.

No. C–3–83–135.

United States District Court,
S.D. Ohio, W.D.

Sept. 18, 1985.

See also 100 F.R.D. 440.

Francis S. McDaniel, Dayton, Ohio, for plaintiff.

Robert J. Fogerty, Cleveland, Ohio, for defendants, Mid-West Insurance Agency, Inc. and Richard E. Bundschuh.

Charles J. Faruki, Dayton, Ohio, Lawrence W. Pollack, John T. Patterson, New York City, for defendants Underwriters at Lloyd's London, named herein as Lloyd's of London and The Sovereign Marine and Gen. Ins. Company, Ltd.

DECISION AND ENTRY SUSTAINING MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS UNDERWRITERS AT LLOYD'S, LONDON AND SOVEREIGN MARINE AND GENERAL INSURANCE COMPANY, LTD.; CLERK DIRECTED TO ENTER FINAL JUDGMENT ON PLAINTIFF'S CLAIMS AGAINST DEFENDANT UNDERWRITERS AT LLOYD'S, LONDON AND DEFENDANT SOVEREIGN MARINE AND GENERAL INSURANCE COMPANY, LTD., THE COURT CONCLUDING THAT THERE IS NO JUST REASON FOR DELAY, FED.R.CIV.P. 54(b); OTHER MOTIONS DEEMED MOOT; STAY OF PROCEEDINGS AGAINST REMAINING DEFENDANTS PENDING APPEAL

RICE, District Judge.

This case arises out of an allegedly fraudulent scheme committed by Defend-

ants Richard F. Bundschuh ("Bundschuh") and Mid-West Insurance Agency, Inc. ("Mid-West"). The Plaintiff is engaged in the business of insurance premium financing. Plaintiff alleges that Bundschuh and Mid-West defrauded it by submitting at least 362 forged applications for premium finance loans on behalf of non-existent insureds. Plaintiff seeks to impose liability upon Defendants Underwriters at Lloyd's, London ("Lloyd's") and the Sovereign Marine and General Insurance Company Limited ("Sovereign") on the basis of agency. *See* Plaintiff's Complaint (Doc. #1) at ¶¶ 18–30. Specifically, Plaintiff alleges in "Count Three" of the Complaint (Doc. #1, ¶¶ 18–23) that Lloyd's contracted with Mid-West, whereby Mid-West became authorized to act as an agent for Lloyd's, with respect to the business of insurance by issuing insurance contracts and certificates of insurance to insureds, collecting premiums from insureds, and adjusting claims. Further, Plaintiff alleges that Lloyd's provided Mid-West "actual and/or apparent authority" to act as Lloyd's agent for the purpose of submitting applications for premium financing on behalf of customers of Lloyd's and that Plaintiff relied on this authority. Doc. #1 at ¶ 20. Plaintiff alleges that the premium financing applications were forged and as a result it suffered damages. In "Count Four" of the Complaint, Plaintiff makes similar allegations against Sovereign. Doc. #1 at ¶¶ 24–30.

This cause is before the Court on Lloyd's and Sovereign's Motions for Summary Judgment. Doc. #46. In their Motion for Summary Judgment, Lloyd's and Sovereign argue that the questions of whether Mid-West and Bundschuh had actual or apparent authority from Lloyd's or Sovereign to deal in the business of insurance premium financing do not raise genuine issues of material fact. Lloyd's and Sovereign assert that Bundschuh and Mid-West were without such authority; consequently, Lloyd's and Sovereign contend that they are entitled to judgment as a matter of

law.[1] In ruling on this motion, initially the Court will restate certain universal principles which govern the resolution of motions for summary judgment. Then the Court will address the issues raised by the present motion.

"The most basic rule of summary judgment practice is that judgment may not be granted if there is a genuine issue with respect to any material fact." *County of Oakland v. City of Berkley*, 742 F.2d 289, 297 (6th Cir.1984). However, a court shall sustain a motion for summary judgment when the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 56(c). In ruling on a motion for summary judgment, the papers of the moving party must be scrutinized while the papers of the party opposing the summary judgment are to be treated indulgently. *Bohn Aluminum & Brass Corp. v. Storm King*, 303 F.2d 425, 427 (6th Cir.1962). Nonetheless, when a motion for summary judgment is properly supported, the opposing party may not rest upon the mere allegations of his complaint, but rather, he must set forth, by affidavit or otherwise, specific facts which show that there is a genuine issue for trial. Rule 56(e); *Glen Eden Hospital v. Blue Cross & Blue Shield of Michigan*, 740 F.2d 423, 427 (6th Cir.1984).

As stated above, Plaintiff would impose liability on Lloyd's and Sovereign for the misrepresentations made to it by Mid-West and Bundschuh in connection with insurance premium financing. For purposes of the present motion, the Court will assume, as Lloyd's and Sovereign concede for similar purposes, that Mid-West and Bundschuh made material misrepresentations which Plaintiff relied upon to its detriment, causing it damages. The question remains whether Lloyd's or Sovereign can be held liable for these misrepresentations. To resolve that question, the Court must examine Mid-West's authority.

---

**1.** Lloyd's and Sovereign move for summary judgment only on the third and fourth counts of Plaintiff's Complaint, the only ones which assert claims for relief against these Defendants.

The express authority[2] which Lloyd's and Sovereign conferred upon Mid-West was set forth in contracts between the parties which are attached as exhibits to the Motion for Summary Judgment (Doc. # 46). Although each contract gives Mid-West very broad authority for the conduct of the business of insurance, nowhere in either contract is there a grant of authority to engage in premium financing. Plaintiff does not argue otherwise. Additionally, the Court notes that there are *no* disputed facts regarding the express authority which Lloyd's and Sovereign conferred upon Mid-West. Hence, even if Plaintiff argued otherwise, the Court would resolve the issue as a matter of law and conclude that no express authority to engage in premium financing exists.

■ Apparent authority is defined as "[t]he power to effect the legal relations of another person by the transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Restatement, 2d, Agency § 8. The touchstone of apparent authority is the principal's conduct toward a third party and not the agent's. *Logsdon v. Main-Nottingham Investment Co.*, 103 Ohio App. 233, 242, 141 N.E.2d 216 (1956); *Meyer v. Klensch*, 114 Ohio App. 4, 6, 175 N.E.2d 870, 872 (1961). Herein, the only conduct by Lloyd's or Sovereign which would be construed as directed toward Plaintiff, the third party, were the acts of entering into contracts with Mid-West. Otherwise, Lloyd's and Sovereign had no contact with Plaintiff. Because the contracts between Mid-West and Lloyd's, and Mid-West and Sovereign do not authorize Mid-West to engage in premium financing, it must follow that the contracts do not provide a basis for concluding that Lloyd's or Sovereign's conduct toward Plaintiff endowed Mid-West with apparent authority to engage in premium financing on behalf of Lloyd's or Sovereign. Lloyd's and Sover-

eign did nothing, either by way of ratification of their agent's acts or expressly or impliedly with reference to the Plaintiff, from which the Plaintiff could assume that the agents (Bundschuh and Mid-West) had the apparent authority to act in Lloyd's and Sovereign's behalf with reference to premium financing. Accordingly, the Court concludes that Mid-West was without express *or* apparent authority to engage in premium financing.

■ In its memorandum in opposition to the motion for summary judgment (Doc. # 49), Plaintiff presents a number of arguments which the Court will address. Initially, Plaintiff argues that by virtue of the express written authority contained in the contracts between Lloyd's, Sovereign and Mid-West, Mid-West was endowed with implied actual authority to deal with the public in all respects which are incidental to, usual and reasonably necessary for Mid-West to sell Lloyd's and Sovereign's insurance. This is of course true. However, in *Spengler v. Sonnenberg*, 88 Ohio St. 192, 200–01, 102 N.E. 737 (1913), the Ohio Supreme Court addressed the question of an agent's incidental authority and said "the incidental authority which the agent has by implication is only such as is necessary to carry into effect the power actually conferred upon him." *See also, Chesapeake & Ohio Ry. Co. v. Ringstaff*, 67 F.2d 482, 484 (6th Cir.1933) ("[An agent's] implied authority embraces nothing except the powers necessary to carry into effect the purposes of the agency.").

Based on the evidence before it, the Court concludes that there is not a genuine issue of fact as to the relationship between the business of premium financing and the business of writing and selling insurance policies. *All* evidence before the Court demonstrates that the business of premium financing is *not* incidental to or necessary to the business of writing and selling insurance policies. There is *no* evidence, such as an affidavit, which would tend to raise

**2.** "Authority is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifesta-

tions of consent to him." Restatement, 2d, Agency § 7. Authority can be express or implied. *Id.* at Comment c.

an issue of fact about whether the business of premium financing is inextricably interwoven with the business of writing and selling insurance policies. Accordingly, this case presents a purely legal question for the Court; there being no factual disputes for a jury to resolve. The Court concludes that the business of premium financing is not inextricably interwoven with the business of writing and selling insurance policies.

Plaintiff's employees recognize that insurance premium financing is distinct from the business of insurance. Ronald E. Dewey, vice president and treasurer of Plaintiff, testified that he did not consider premium financing to be carrying on the business of insurance. Dep. of Dewey at 31. James E. Reagan, executive vice president of Plaintiff, made the same statement. Reagan Dep. at 18. George Reedy, Plaintiff's president, stated that the functions of premium financing and insurance are separate and distinct and that premium financing is not the business of insurance; it is financing. Reedy Dep. at 8, 32. Diane Powers, a new business reviewer in Plaintiff's Illinois office, stated that the Illinois office did not deal in any type of underwriting or anything in insurance; they were a finance institute. Powers Dep. at 30. Dianne Salza Thomas, operations manager at Plaintiff's Illinois branch office, stated that she did not consider premium financing to be carrying on the business of insurance. Thomas Dep. at 14. John E. Glavan, formerly a regional marketing manager with Plaintiff, also said that he considered the business of premium financing to be separate and distinct from the business of insurance. Glavan Dep. at 8.

Under Ohio's regulatory scheme, insurance premium financing is recognized as distinct from the business of insurance. Insurance is comprehensively regulated in Ohio Rev.Code Title 39. Premium financing is regulated by Ohio Rev.Code §§ 1321.71–1321.82. Indeed, insurance companies are exempted from the regulations of premium financing. Ohio Rev. Code § 1321.72(A).

Based upon the uncontroverted evidence before it, and the regulatory framework adopted by the Ohio General Assembly, this Court concludes that the question of whether engaging in the business of premium financing is a necessary, reasonable and usual incident to the business of writing and selling insurance policies does *not* raise a genuine issue of fact. As a matter of law, the Court concludes that premium financing is not incidental to the business of insurance. Accordingly, the Court concludes that Lloyd's and Sovereign did not endow Mid-West with implied actual authority to engage in the business of premium financing, merely because of their grant to Mid-West of express, written authority to Mid-West to engage in the business of insurance.

Alternatively, the Plaintiff argues that Mid-West had implied actual authority, incidental to its express written authority to represent to insureds that certificates of insurance did exist, insuring named insured, and that the named insured had signed documents in connection with the insurance including applications for loans to finance the premiums of such insurance. Doc. # 49 at 9. This argument is without merit. As discussed above, Mid-West's authority, express, implied or apparent, did not extend to the business of premium financing. It is apparent that Plaintiff is merely attempting to argue, in another manner, that Mid-West had authority to engage in premium financing. The representations that were made to Plaintiff, that certificates of insurance had been issued to named insureds and that the premium financing applications had been filled out by the named insured, were made in connection with premium financing and not the business of insurance. It was not within the scope of Mid-West's implied actual authority to engage in the business of premium financing. Therefore, Lloyd's and Sovereign cannot be held liable for the misrepresentations of their agent made in the connection with that business.

The Court's conclusion that the business of premium financing is not inextricably

interwoven with the business of insurance is supported by much if not all of the analogous case law. For instance, in *National Premium Budget Plan Corp. v. National Fire Ins. Co.*, 106 N.J.Super. 238, 254 A.2d 819 (1969), the court held that a principal/insurer was not liable for the misappropriation of premium finance loans by its agent. The court noted that the agent was not an agent of the insurer when it was arranging loans, rather that he was acting on his own behalf or that of the insureds when he so acted. *Id.* 254 A.2d at 820. Similar results have been reached by other courts. *See First Trust & Deposit Co. v. Middlesex Mutual Fire Ins. Co.*, 259 App.Div. 80, 18 N.Y.S.2d 936, *aff'd*, 284 N.Y. 747, 31 N.E.2d 510 (1940); *Acceptance Premium Finance Co. v. R.M. Cochran Co.* (unreported Tenn.App.1974).[3] There is some authority which could be considered contrary. However, for various reasons, this Court does not find same to be persuasive. For example, in *Baker & Company v. Preferred Risk Mutual Ins. Co.*, 569 F.2d 1347 (5th Cir.1978), the court affirmed a jury award, against an insurer and in favor of a premium finance company, based on a fraud, similar to the one alleged herein, committed by an agent of the insurer. In reaching its conclusion, the court noted that the insurer conceded that the agent had authority to perform premium financing. *Id.* at 1349. As this Court has discussed, no such authority exists herein. Similarly, in *Industrial Ins. Co. of New Jersey v. First Nat. Bank of Miami*, 57 So.2d 23 (Fla.1952), the insurer was held liable for the defalcations of its agent in a premium financing scheme; however, it is apparent that the insurer had authorized the premium financing system. In *New England Accept. Corp. v. American Mfrs.*

*M.I. Co.*, 4 Mass.App. 172, 344 N.E.2d 208 (1976), *aff'd*, 373 Mass. 594, 368 N.E.2d 1385 (1977), the court imposed liability on an insurer, as a matter of law. Therein, the court held that an agent's arranging for premium financing came within the broad authority. 344 N.E.2d at 212. In part, the court's decision therein was based on a Massachusetts statute which authorized agents to accept notes as payment of insurance premiums and provided that the sale or negotiation of such a note was part of the process of selling insurance.[4] *Id.*, 344 N.E.2d at 213. Ohio does not have a similar statute. Therefore, this Court does not consider *New England Acceptance Corp.* to be persuasive.

■ Plaintiff also relies on two portions of the Ohio statutes regulating insurance premium finance companies, Ohio Rev.Code §§ 1321.81 and 1321.78(A)(2). Neither of these statutes even remotely imposes a duty upon an insurer to answer for the fraud that its agent commits on an insurance premium financing company. Consequently, neither section provides a basis for holding Lloyd's and Sovereign liable.

Based upon the foregoing, the Court hereby sustains Defendant's Lloyd's and Sovereign's Motion for Summary Judgment. (Doc. # 46). Moreover, pursuant to Rule 54(b), the Court finds that there is no just cause for delay. Accordingly, the Court hereby directs the clerk to enter final judgment in favor of Defendants Lloyd's and Sovereign and against Plaintiff on Plaintiff's claims set forth in the third and fourth counts of the Complaint against Lloyd's and Sovereign.[5] The entering of final judgment will allow an immediate appeal of this Court's decision to the Sixth Circuit Court of Appeals.

**3.** A copy of this unreported decision is attached to the motion for summary judgment.

**4.** In *New England Acceptance Corp.*, insureds would make notes to pay for their insurance policy. The agent would then discount the notes with companies such as the plaintiff therein. The suit arose over one agent's practice of discounting forged notes.

**5.** Counsel for Lloyd's and Sovereign have informed the Court that they will dismiss, without prejudice, their counterclaim against Plaintiff. Plaintiff, in turn, will waive the statute of limitations so that Lloyd's and Sovereign can reassert their counterclaim, within forty days of any decision of the United States Court of Appeals for the Sixth Circuit which reverses this Court's order herein and thus reinstates the Plaintiff's claims against them.

Two discovery motions are also pending, to wit: Plaintiff's Motion to Compel Discovery or in the Alternative for Orders Pursuant to Rule 23.2 (Doc. # 30) and Lloyd's and Sovereign's Motion to Compel Production of Documents (Doc. # 36). As a result of its ruling on Lloyd's and Sovereign's motion for summary judgment, the Court concludes that these motions are moot. Accordingly, same will not be ruled upon. The Court notes that there can be no prejudice from this ruling. Defendants' motion for summary judgment has been sustained, and Plaintiff's discovery motion is directed at the capacity of Defendant Lloyd's to be sued, as a result of its status as an unincorporated association. The Plaintiff's motion to compel has absolutely no relevance to the issues raised by the motion for summary judgment.

Likewise, the motion of Defendants Lloyd's and Sovereign for a continuance (Doc. # 57), and the Plaintiff's motions for judgment on the pleadings (Doc. # 58) and motion in limine (Doc. # 59) are moot. Accordingly, these three motions will not be ruled upon.

In view of the fact that final judgment has been entered in favor of the Defendants Lloyd's and Sovereign, the Court having found there is no just reason for delay, Fed.R.Civ.P. 54(b), and, further, since Plaintiff's counsel has advised this Court of its intention to file an immediate appeal of this Court's decision herein, the Plaintiff's action against the remaining Defendants (Bundschuh and Mid-West) is stayed pending appeal.